**Harry SCHILDCROUT,
Petitioner-Appellee,**

v.

**Robert M. McKEEVER, District Director,
Internal Revenue Service,
Respondent-Appellant.**

Nos. 76–2625, 76–2794.

United States Court of Appeals,
Ninth Circuit.

Aug. 22, 1978.

---

Richard Farber, Atty. (argued), Dept. of Justice, Washington, D. C., for respondent-appellant.

Stephen E. Silver (argued) of Burch, Cracchiolo, Levie, Guyer & Weyl, Phoenix, Ariz., for petitioner-appellee.

Before CHAMBERS, GOODWIN and KENNEDY, Circuit Judges.

KENNEDY, Circuit Judge:

The taxpayer, Harry Schildcrout, commenced this action in United States district court to enjoin the Internal Revenue Service from imposing a jeopardy assessment and from implementing the procedures necessary to enforce collection. The injunctive relief requested by the taxpayer was granted in part and denied in part by the district court.

The Internal Revenue Service imposed a jeopardy assessment against Schildcrout on March 31, 1973 under Internal Revenue Code section 6862.[1] The IRS alleged nonpayment of the excise tax on wagering imposed by I.R.C. § 4401[2] and made a jeopardy assessment against Schildcrout for some $97,500, plus interest. The Government alleged that excise taxes were owed for wagering during a thirteen-month period from March 1, 1972 to March 31, 1973. The Government had direct evidence of the volume of wagering activity for only ten days of this period, March 9, 1973 to March 18, 1973. The jeopardy assessment for the thirteen-month interval was based on the Government's conclusion that gambling activities were carried on during the entire thirteen months and on an estimation of the volume of wagering activity during those thirteen months. The Government made its estimate by extrapolating from the amount of wagering during the ten-day period. Schildcrout contends that the assessment for the thirteen months is utterly without factual support, and that any assessment for wagering during the ten-day period or any extrapolation therefrom is impermissible because both are based on information that was disclosed in violation of federal laws regulating wiretapping. Schildcrout also contends that he will suffer irreparable injury as a result of the assessment.

The Government has argued, both here and in the district court, that the taxpayer's suit for injunctive relief is barred by the Anti-Injunction Act of the Internal Revenue Code, I.R.C. § 7421(a).[3] The principal

---

1. I.R.C. § 6862(a) provides:

   Immediate assessment.—If the Secretary or his delegate believes that the collection of any tax (other than income tax, estate tax, and gift tax) under any provision of the internal revenue laws will be jeopardized by delay, he shall, whether or not the time otherwise prescribed by law for making return and paying such tax has expired, immediately assess such tax (together with all interest, additional amounts, and additions to the tax provided for by law). Such tax, additions to the tax, and interest shall thereupon become immediately due and payable, and immediate notice and demand shall be made by the

   Secretary or his delegate for the payment thereof.

   Detailed procedures for review of jeopardy assessments have been created by the Tax Reform Act of 1976, Pub.L. No. 94–455, 90 Stat. 1695 (1976) (codified in I.R.C. § 7429). Schildcrout's suit antedates the Act.

2. I.R.C. § 4401(a) then provided for a tax of 10% on wagering. The section has subsequently been amended to reduce the tax to 2%. Pub.L. No. 93–499, 88 Stat. 1550 (1974).

3. I.R.C. § 7421(a) then provided:
   Tax.—Except as provided in sections 6212(a) and (c), 6213(a), and 7426(a) and

issue in the case is whether the Government is correct in that assertion or whether Schildcrout's case comes within a judicially defined, and narrow, exception to the statutory proscription of injunctions against the collection of taxes. We conclude that the exceptional circumstances which permit a court to enjoin the assessment or collection of a tax are not present in this case.

Even before the Supreme Court's decision in *Commissioner v. Shapiro*, 424 U.S. 614, 96 S.Ct. 1062, 47 L.Ed.2d 278 (1976), the Court had established that the Anti-Injunction Act does not bar relief for taxpayers in a class of exceptional cases. *Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962); *Miller v. Standard Nut Margarine Co.*, 284 U.S. 498, 52 S.Ct. 260, 76 L.Ed. 422 (1932). The *Nut Margarine* case, as explained in *Williams Packing*, held that a district court has jurisdiction to enjoin the collection of a tax if the taxpayer satisfies the traditional requisites for equitable relief and in addition shows that "under no circumstances could the Government ultimately prevail" in the collection of the tax. *Enochs v. Williams Packing & Navigation Co.*, 370 U.S. at 7, 82 S.Ct. at 1129.

In *Shapiro* the Supreme Court reaffirmed the doctrine of *Nut Margarine* and *Williams Packing* and addressed the question of what showing the Government is required to make when a taxpayer claims that his case falls within the exceptional class which justifies equitable relief. The Supreme Court declined to discuss the question in terms of burden of proof, but it would appear that the burden of showing that the assessment is baseless remains on the taxpayer. 424 U.S. at 627–29, 96 S.Ct. 1062; *James v. United States*, 542 F.2d 16, 17 (6th Cir. 1976), *cert. denied*, 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540 (1977); *Shannon v. United States*, 521 F.2d 56, 61 (9th Cir. 1975), *cert. denied*, 424 U.S. 965, 96 S.Ct. 1458, 47 L.Ed.2d 731 (1976); *West-gate-California Corp. v. United States*, 496 F.2d 839, 843 (9th Cir. 1974). *See Flores v. United States*, 551 F.2d 1169, 1174 (9th Cir. 1977). The Court did make it clear, however, that while the Government is not required to litigate its entire case, it is required to disclose the factual basis for the jeopardy assessment. *Commissioner v. Shapiro*, 424 U.S. at 628 & n.10, 633, 96 S.Ct. 1062. We further understand *Shapiro* to require that the Government reveal facts sufficient to indicate that it at least has probable cause for making the assessment. The Court stated:

> The Government may defeat a claim by the taxpayer that its assessment has no basis in fact—and therefore render applicable the Anti-Injunction Act—without resort to oral testimony and cross-examination. Affidavits are sufficient so long as they disclose basic facts from which it appears that the Government may prevail. The Constitution does not invariably require more, *Gerstein v. Pugh*, 420 U.S. 103, [95 S.Ct. 854, 43 L.Ed.2d 54] (1975); *Mathews v. Eldridge*, 424 U.S. 319, [96 S.Ct. 893, 47 L.Ed.2d 18] (1976), and we would not hold that it does where collection of the revenues is involved.
>
> Finally, it seems apparent that if the facts do not even disclose "probable cause," *North Georgia Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601, 607, [95 S.Ct. 719, 42 L.Ed.2d 751] (1975); *Gerstein v. Pugh, supra*, to support the assessment, the Government would certainly be unable to prevail at trial. Thus the *Williams Packing* standard is consistent with the applicable constitutional standard.

*Id.* at 633, 96 S.Ct. at 1073.

Applying these principles to the instant case, Schildcrout's contention that the Government could not prevail under any circumstances must be examined as to three different time intervals to which the assessment applied, namely, a ten-day period dur-

(b)(1), no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed.

Schildcrout does not contend that he is within any of the exceptions listed.

ing which there was a wiretap providing direct evidence of gambling activity (March 9, 1973 to March 18, 1973); a period of over twelve months preceding the ten-day interval (March 1, 1972 to March 8, 1973); and the brief period after the wiretap surveillance ended (March 19, 1973 to March 31, 1973).

We consider first the ten-day interval during which there was wiretap surveillance. At the hearing on this matter Schildcrout admitted that he accepted wagers during this time and the Government disclosed by affidavit that the information obtained by the wiretap revealed that over the ten-day period $27,225 was wagered on sporting events other than horse racing and $1,150 was wagered on horse racing. The district court refused to enjoin the assessment of $2,500 for unpaid wagering tax for these ten days, and we agree with its resolution of that issue.

Schildcrout has consistently maintained that any evidence obtained by wiretap is inadmissible under those sections of the Omnibus Crime Control and Safe Streets Act of 1968, as amended, pertaining to wiretap surveillance. 18 U.S.C. §§ 2510 *et seq.* Without this evidence, he argues, the Government cannot ultimately prevail. The wiretap surveillance was conducted by the Police Department of the City of Phoenix. Schildcrout argues not that the wiretap itself was improper but that disclosure of its contents to IRS special agents is prohibited and that the proper remedy for the unauthorized disclosure is exclusion from evidence. He makes this contention both in this suit for injunctive relief and in a motion to suppress in a pending tax refund suit. The Government contends that an IRS special agent is an "investigative or law enforcement officer" as defined by 18 U.S.C. § 2510(7) [4] to whom the disclosure of information obtained by an authorized wiretap is permitted by 18 U.S.C. § 2517(1). [5] *See Fleming v. United States,* 547 F.2d 872, 875 n. 4 (5th Cir. 1977), *cert. denied,* 434 U.S. 831, 98 S.Ct. 113, 54 L.Ed. 90 (1978); *United States v. Iannelli,* 477 F.2d 999, 1001 (3rd Cir. 1973), *aff'd on other grounds,* 420 U.S. 770, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975). The Government further argues that even assuming that special agents are not entitled to receive wiretap information, suppression under 18 U.S.C. § 2515 [6] pertains only to unauthorized interception of wire communications, not to the unauthorized disclosure of legitimate interceptions. *See Fleming v. United States,* 547 F.2d at 874; *United States v. Iannelli,* 477 F.2d at 1001. *See also United States v. Janis,* 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976).

Taxpayer injunction suits may not be used as a collateral mechanism for resolving issues of law or facts which may be disputed in good faith. *Enochs v. Williams Packing & Navigation Co.,* 370 U.S. at 7–8, 82 S.Ct. 1125. To avoid the bar of section 7421(a) a taxpayer must show that "under the most liberal view of the law and the facts, the United States cannot establish its claim . . .." *Id.* at 7, 82 S.Ct. at 1129.

4. 18 U.S.C. § 2510(7) states that:
"Investigative or law enforcement officer" means any officer of the United States or of a State or political subdivision thereof, who is empowered by law to conduct investigations of or to make arrests for offenses enumerated in this chapter, and any attorney authorized by law to prosecute or participate in the prosecution of such offenses.

5. 18 U.S.C. § 2517(1) provides that:
Any investigative or law enforcement officer who, by any means authorized by this chapter, has obtained knowledge of the contents of any wire or oral communication, or evidence derived therefrom, may disclose such contents to another investigative or law enforcement officer to the extent that such disclosure is appropriate to the proper performance of the official duties of the officer making or receiving the disclosure.

6. 18 U.S.C. § 2515 states in full:
Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision thereof if the disclosure of that information would be in violation of this chapter.

In this case the Government has substantial, non-frivolous legal arguments to justify the introduction of the wiretap evidence. The Government's contentions, as well as other possible avenues for the introduction of the evidence, see 18 U.S.C. § 2517(3) & (5);[7] *Fleming v. United States,* 547 F.2d at 875, "are sufficiently debatable to foreclose any notion that 'under no circumstances could the Government ultimately prevail . . . ,'" *Bob Jones University v. Simon,* 416 U.S. 725, 749, 94 S.Ct. 2038, 2052, 40 L.Ed.2d 496 (1974), *quoting Enochs v. Williams Packing & Navigation Co.,* 370 U.S. at 7, 82 S.Ct. 1125. *Accord, Patrick v. United States,* 524 F.2d 1109, 1115–17 (7th Cir. 1975) (per Judge, now Mr. Justice, Stevens). *Cf. Hamilton v. United States,* 429 F.2d 427 (2d Cir. 1970) (per curiam), *affirming on decision below,* 309 F.Supp. 468, 474 (S.D.N.Y.1969) (alternate ground) (determination of admissibility of evidence not proper in a suit to enjoin taxes), *cert. denied,* 401 U.S. 913, 91 S.Ct. 881, 27 L.Ed.2d 812 (1971); *Patrick v. United States,* 524 F.2d at 1115 (determination of admissibility not proper in injunction suit). Accordingly, the trial court was correct in refusing to enjoin the tax proceedings that pertained to the ten-day period. A suppression hearing was held in the refund suit for a determination of these evidentiary matters. Schildcrout's motion to suppress was denied without prejudice to his right to object at trial, and the question of admissibility may be litigated properly there. We intimate no view as to the appropriate resolution of Schildcrout's suppression claim in that proceeding.

The Government's assessment for the period prior to the wiretap interval presents quite different considerations. The district court concluded that the Government could not prevail in its attempt to assess taxes for alleged wagering during this time and enjoined efforts to collect the taxes. Although the issue is a difficult one to resolve, we disagree with the district court.

The Government disclosed its reasons for concluding that Schildcrout had been accepting wagers during the pre-wiretap period and computed its assessment by extrapolating from the amount of wagers known to have been received during the wiretap interval. Extrapolation is a permissible method of proving the volume of unreported wagers, *Gordon v. Commissioner,* 572 F.2d 193, 195 (9th Cir. 1977); *Carson v. United States,* 560 F.2d 693 (5th Cir. 1977); *DeLorenzo v. United States,* 555 F.2d 27, 29 (2d Cir. 1977); *see United States v. Janis,* 428 U.S. 433, 437, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976), and a jeopardy assessment based on an extrapolation cannot be enjoined where the Government has disclosed an evidentiary basis for its determination that wagering took place over the period of the assessment. *Hamilton v. United States,* 309 F.Supp. at 473; *see Commissioner v. Shapiro,* 424 U.S. at 629, 633, 96 S.Ct. 1062; *Carson v. United States, supra; cf. Lucia v. United States,* 474 F.2d 565 (5th Cir. 1973) (en banc) (projection for a five-year period based on one day's gambling receipts may be enjoined, if, *inter alia,* there is no basis for conclusion that gambling took place over the entire period);

**7.** 18 U.S.C. § 2517 provides in part:

(3) Any person who has received, by any means authorized by this chapter, any information concerning a wire or oral communication, or evidence derived therefrom intercepted in accordance with the provisions of this chapter may disclose the contents of that communication or such derivative evidence while giving testimony under oath or affirmation in any proceeding held under the authority of the United States or of any State or political subdivision thereof.

. . . . .

(5) When an investigative or law enforcement officer, while engaged in intercepting wire or oral communications in the manner authorized herein, intercepts wire or oral communications relating to offenses other than those specified in the order of authorization or approval, the contents thereof, and evidence derived therefrom, may be disclosed or used as provided in subsections (1) and (2) of this section. Such contents and any evidence derived therefrom may be used under subsection (3) of this section when authorized or approved by a judge of competent jurisdiction where such judge finds on subsequent application that the contents were otherwise intercepted in accordance with the provisions of this chapter. Such application shall be made as soon as practicable.

*Pizzarello v. United States,* 408 F.2d 579 (2d Cir.) (government cannot prevail in assessment for five-year period based on three days' receipts absent factual basis for belief that gambling took place over entire period), *cert. denied,* 396 U.S. 986, 90 S.Ct. 481, 24 L.Ed.2d 450 (1969).

■ The evidence on which the Government stated that it intended to rely in addition to that obtained by the wiretap included the following: (1) Schildcrout was indicted in state court for, and pleaded guilty to, three counts of accepting wagers in February of 1972 and Schildcrout was charged in the same indictment with accepting wagers on March 15, 1972; (2) Schildcrout was indicted in federal court for wagering activities taking place in November and December, 1971 and pleaded guilty to a charge based on activities on December 8, 1971; (3) "a reliable confidential informant" of detective Joe Boofer of the Phoenix Police Department advised Boofer, who in turn told IRS special agent Grantham, that Schildcrout had been accepting wagers since at least March 19, 1972; (4) Grantham interviewed an individual who stated that he had known Schildcrout for three or four years, had placed bets with Schildcrout for two or three basketball and two football seasons prior to April, 1973, recalled bets of $5, $100, and $200 on individual games, and had placed his bets solely through Schildcrout during the 1971 and 1972 football seasons and the 1972 and 1973 basketball seasons; and (5) on March 31, 1973 a search of Schildcrout's premises pursuant to a search warrant revealed evidence of gambling activities, including betting slips. Record, vol. II, at 299–302. While most of these facts related to times either before March 1, 1972 or after March 8, 1973, they corroborate the statements of the two informants and provide an evidentiary basis for the assessment for wagering during the period. *See Carson v. United States, supra.* It cannot be said that on the most liberal view of the facts the Government could not prevail.

■ We also hold that the district court was incorrect in concluding that the Government could not prevail in its assessment for wagering during the period from March 19 to March 31, 1973, the period after the wiretap had ended. Schildcrout was known to have been engaged in a profitable wagering business prior to March 19 and the search on March 31 revealed betting slips. The inference that Schildcrout was engaged in the business of accepting wagers on March 31 is permissible as is the further inference that he had continued his operations during the brief period when he was not under direct observation. Wagering activity having been shown, extrapolation is, at this juncture, an appropriate method of estimating the tax due.

Because Schildcrout did not establish certainty of success on the merits as to the assessment for any of the three periods we need not inquire whether he established irreparable injury. *United States v. American Friends Service Committee,* 419 U.S. 7, 11, 95 S.Ct. 13, 42 L.Ed.2d 7 (1974) (per curiam); *Shannon v. United States,* 521 F.2d 56, 61 (9th Cir. 1975), *cert. denied,* 424 U.S. 965, 96 S.Ct. 1458, 47 L.Ed.2d 731 (1976).

■ Finally, Schildcrout argues that he is denied due process by the bar of section 7421(a). Such contention is without merit. *Commissioner v. Shapiro,* 424 U.S. at 633, 96 S.Ct. 1062; *Bob Jones University v. Simon,* 416 U.S. 725, 746–48, 94 S.Ct. 2038, 40 L.Ed.2d 496 (1974).

■ The judgment of the district court enjoining the collection of the wagering tax is reversed and the cause is remanded. The district court also held that "the Internal Revenue Service is given a judgment in the sum of $2,500.00 as it relates to federal excise taxes assessed for the ten-day period of March 9, 1973 to and including March 18, 1973." Since the sole issue before the district court was whether Schildcrout was entitled to injunctive relief, there should not have been a final resolution of the question of the validity of the assessment. To the extent that the district court resolved this issue, the judgment is vacated. Insofar as its statement amounts to a denial of the requested injunctive relief for the

ten-day period, the district court is affirmed.

The cause is remanded for further proceedings consistent with this disposition.