**KEMLON PRODUCTS AND DEVELOP-MENT COMPANY et al.,**
**Plaintiffs-Appellees,**
**v.**
**UNITED STATES of America et al.,**
**Defendants-Appellants.**

No. 79–1452.

United States Court of Appeals,
Fifth Circuit.

March 12, 1981.

Rehearing and Rehearing En Banc

Denied May 29, 1981.

J. A. Canales, U. S. Atty., Houston, Tex., Michael J. Kearns, Trial Atty., M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews, Chief, Appellate Section, Robert A. Bernstein, Philip I. Brennan, Tax Division, U. S. Dept. of Justice, Washington, D. C., for defendants-appellants.

Sponsel & Urquhart, Edward D. Urquhart, Houston, Tex., for plaintiffs-appellees.

Before HILL, RUBIN and ANDERSON, Circuit Judges.

R. LANIER ANDERSON, III, Circuit Judge:

The appellants, the United States, the Internal Revenue Service, and several officers of the Service, appeal an order permanently enjoining them from disclosing return information of appellee, Kemlon Products and Development Company ("Kemlon"), to any of Kemlon's business customers. Appellants maintain that the injunction falls within the scope of the Internal Revenue Code's Anti-Injunction Act, 26 U.S.C.A. § 7421(a) (West Supp.1980),[1] and that none of the judicially created excep-

---

1. The Anti-Injunction Act, 26 U.S.C.A. § 7421(a) (West Supp.1980), reads in full:

Tax. Except as provided in sections 6212(a) and (c), 6213(a), 6672(b), 6694(c), 7426(a) and (b)(1), and 7429(b), no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed.

tions to this Act applies. Since we find inadequate proof of irreparable harm and sufficient facts to show the government has a chance to prevail on its right to disclose such information, we agree with appellants that the case fits within none of the exceptions to the Anti-Injunction Act. We reverse the district court's decision.

## FACTS

The facts as pleaded and developed through affidavits disclose the following story.

Kemlon and Keystone Engineering Company ("Keystone") are engaged in the research, development, manufacturing, and sale of certain patented products for use in the oil and gas industry. Kemlon and Keystone are related by common ownership and the stock of these corporations is held by Sandiford Ring, Russell K. Ring, William S. Ring, and John H. Ring.[2] All of the foregoing were plaintiffs below, and are appellees here.

In December, 1976, the Internal Revenue Service initiated an audit of Kemlon's and Keystone's tax returns for the fiscal year ending September 30, 1975, and of the individuals' tax returns for the calendar year ending December 31, 1975. In the course of examining Kemlon's tax returns, the Service questioned the accuracy of the valuation of certain patents held by Kemlon.[3] In particular, the Service questioned whether a portion of the value which Kemlon assigned to the patents should have been allocated to assets other than the patents, such as goodwill. It was also concerned about the useful life of the patents. The Service

was concerned that Kemlon had valued the patents too highly and had thereby obtained a larger depreciation deduction than was properly allowable. It is undisputed that during the audit, Kemlon has provided the Service with all the information it has requested concerning the patents and the patented product.

Despite Kemlon's cooperation, Engineering Agent Gary D. Brown, who was the Service's agent in charge of valuing the patents, determined that it would be necessary to contact customers of Kemlon. When counsel for Kemlon was informed by Agent Brown that he intended to contact Kemlon's customers and elicit information concerning the product, their use of the product and their dealings with Kemlon, Kemlon's counsel objected on grounds that any such contact would disrupt the confidential business relationship between Kemlon and its customers and would constitute unauthorized disclosure of tax return information in violation of 26 U.S.C.A. § 6103(k)(6) (West Supp.1980).[4] Kemlon's counsel offered to secure information from third parties or, alternatively, to arrange a meeting with customers if Agent Brown would furnish in advance the questions to be asked. Agent Brown declined to accept the suggestions of Kemlon's attorney.

After further consultation by Agent Brown with other officials in the Service, it was determined that the valuation of Kemlon's patents required that Agent Brown contact Kemlon's major customer. The Acting District Disclosure Officer notified Agent Brown that such a contact would not violate § 6103. Agent Brown thereafter

---

**2.** The wives of Sandiford Ring, Russell K. Ring, and John H. Ring are parties to this action only by virtue of having filed joint income tax returns with their respective husbands.

**3.** The patents are incorporated into a single patented product, a ceramic electrical connector.

**4.** 26 U.S.C.A. § 6103(k)(6) (West Supp.1980) reads in full:

Disclosure by internal revenue officers and employees for investigative purposes.—An internal revenue officer or employee may, in connection with his official duties relating to

any audit, collection activity, or civil or criminal tax investigation or any other offense under the internal revenue laws, disclose return information to the extent that such disclosure is necessary in obtaining information, which is not otherwise reasonably available, with respect to the correct determination of tax, liability for tax, or the amount to be collected or with respect to the enforcement of any other provision of this title. Such disclosure shall be made only in such situations and under such conditions as the Secretary may prescribe by regulation.

contacted Kemlon and offered it the opportunity to arrange a meeting with its major customer and to be present at the meeting. Agent Brown continued to refuse to provide Kelmon with a list of questions to be asked or to have Kemlon act as intermediary.

Kemlon and the other appellees at this time filed the instant suit, seeking to enjoin Agent Brown and the Service from disclosing directly or indirectly Kemlon's return information to Kemlon's customers.[5] Kemlon claimed that such an injunction did not come within the scope of the Anti-Injunction Act and that disclosure of the return information would violate (i) § 6103(k)(6) of the Internal Revenue Code, (ii) the Privacy Act of 1974, 5 U.S.C.A. § 552a(b) (West 1977), and (iii) Kemlon's constitutional right to privacy. Kemlon alleged that the Service intended to contact its largest customer concerning the patents in question. In its pleading that such a contact would cause substantial and irreparable harm for which no adequate remedy existed at law, Kemlon alleged that its industry was highly competitive and that its largest customers are interested in doing business with technological and research-oriented companies which

are considered financially stable. Kemlon alleged that disclosure of return information would result in a loss of business reputation and the opportunity for Kemlon to work on new and other patentable products.

In support of its allegation of irreparable harm, Kemlon submitted the affidavit of John H. Ring repeating the allegations of the complaint and containing an additional assertion that irreparable harm would result because Kemlon's customers are interested only in research companies stable in the areas of acquiring raw materials for inventory, the manufacturing process, the quality control process, and the distribution process. Ring's affidavit elaborated no further as to how irreparable harm would be suffered.

The Service submitted a motion to dismiss Kemlon's suit on grounds that it was barred by the Anti-Injunction Act. Attached to this motion was an affidavit by Agent Brown describing in very general terms the questions he wished to ask of Kemlon's customer.[6] Agent Brown also gave reasons as to why the Service was opposed to giving the specific questions first to Kemlon.[7] After a hearing on this

---

5. In the alternative, Kemlon sought damages pursuant to 26 U.S.C.A. § 7217 (West Supp. 1980).

6. The questions, as generally described by Agent Brown, are:

(A) Has the customer ever produced a certain type of product;
(B) Whether the customer holds any patents on these products and if so, whether royalties are paid and the amount of royalties;
(C) The history of the customer's dealings with Kemlon;
(D) Whether the customer has knowledge of a certain type of product being sold on the open market with a certain type of rating;
(E) Whether any corporations or entities related to the customer resell or manufacture a certain type of product;
(F) Whether the customer purchases a certain product from Kemlon by virtue of a particular fact or would the customer purchase this product if a certain feature were absent;
(G) The customer's views as to whether the patented product is superior to another type of product produced by Kemlon and the reasons therefor;

(H) Various questions dealing with a specific agreement between Kemlon and the customer;
(I) Various technical questions relating to a product used by the customer;
(J) Verification of certain specifications for a particular product;
(K) Experience which the customer has had in using a particular product;
(L) Views of the customer towards Kemlon's abilities, technical knowledge, and quality control;
(M) Various aspects of the customer's dealings with Kemlon; and
(N) Views of the customer toward potential market developments and changes relating to a certain product.
Agent Brown did not name or describe the product in his affidavit because at the time the motion to dismiss was filed, Kemlon had not identified the product in its pleadings and the Service was reluctant to disclose the product in light of the nature of Kemlon's complaint.

7. The reasons given by Agent Brown are:

(A) [A]ffiant [Brown] believes that Kemlon and the customer in question should not have an opportunity to collaborate on the responses that should be made to the specific inquir-

motion on March 20, 1978, the district court entered an order dated May 22, 1978, in which it rejected Kemlon's claim that the disclosure was barred by the Privacy Act of 1974 and the United States Constitution. The district court further held that the requested injunction was within scope of the Anti-Injunction Act, but was concerned that the judicial exception to this Act established by *Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962), was applicable. The district court noted that Kemlon had made a "substantial claim of irreparable injury" and had been unable to address adequately whether the Service would prevail on the § 6103(k)(6) claim because of the Service's refusal to disclose the specific questions it wished to ask Kemlon's customer. Rather than rule at that time on the motion to dismiss, the court on the basis of *Commissioner of Internal Revenue v. Shapiro*, 424 U.S. 614, 96 S.Ct. 1062, 47 L.Ed.2d 278 (1976), ordered the Service to submit to Kemlon questions to be asked of its customer in order that Kemlon could have an opportunity under *Enochs* to prove that it would prevail on its § 6103 claim.

The Service thereupon filed a motion requesting the district court to reconsider its May 22 order. The Service maintained that *Shapiro* was not applicable because Kemlon had not pleaded or proved facts establishing it would suffer irreparable harm through the contact with its customer. The Service argued in the alternative that if the district court believed *Shapiro* was applicable, Agent Brown's affidavit describing generally the questions to be asked provided sufficient information to show that the *Enochs* exception did not apply. In the event the district court should refuse to grant the motion to reconsider its May 22 order, the Service requested that the May 22 order be certified for appeal under 28 U.S.C.A. § 1292(b), or, alternatively, that the district court issue an injunction on the basis of the record as it then stood.

On September 8, 1978, a hearing was held with respect to the May 22 order. No new arguments were brought forth at that time although the Service submitted to the district court, sealed for *in camera* inspection, the specific questions it proposed to ask Kemlon's customer. On December 28, 1978, the district court entered final judgment denying the Service's motion to reconsider its May 22 order and issuing an injunction barring the Service from disclosing return information to Kemlon's business customers. The Service timely appealed this order.[8]

On March 27, 1979, the district court entered Findings of Fact and Conclusions of Law. The district court found that the Service offered no evidence to controvert Kemlon's claims of irreparable injury for

ies; in this regard, a potential issue in the patent valuation is whether or not a portion of Kemlon's income should be allocated to assets other than the patent, such as goodwill; some of the questions seek to inquire as to whether or not there is any element of goodwill existing between Kemlon and the customer; in the substantiation of the patent valuation provided to affiant by Mr. Urquhart [Kemlon's attorney], there does not appear to be any allocation of income to an element of goodwill or other assets of Kemlon, or to other products sold by Kemlon;

(B) [A]ffiant believes that to properly arrive at a fair market value of the patent, in this case, the underlying information sought from the customer and other third parties for that matter needs to be independently obtained, verified and confirmed without Kemlon's intervention;

(C) [O]bviously, some of the information would only be within the knowledge of the customer; because of the particular circumstances in this case, affiant believes that direct contact with the third party would be the appropriate manner to secure the information so that Kemlon would not have an opportunity to influence or suggest responses to questions; and

(D) [A]nswers which the customer may make to certain questions could prompt further questions; if Kemlon obtains written responses to questions proposed by affiant, then affiant may have to ask Kemlon to submit further questions to the customer which may or may not be resisted by Kemlon; in short, this procedure is somewhat cumbersome to all parties.

8. Kemlon has not cross-appealed the district court's ruling that disclosure of the return information is not barred by the Privacy Act of 1974 or the United States Constitution.

which there was no adequate remedy at law. Accordingly, the court found such irreparable injury to obtain. The district court further found that the Service refused to provide Kemlon with the specific questions to be asked of its customer, and that the appropriate sanction under *Shapiro* for such refusal was the issuance of the injunction.[9]

## APPLICABILITY OF ANTI–INJUNCTION ACT

■ Kemlon asserts without reference to authority that this suit to prevent alleged unnecessary disclosure of return information in violation of § 6103(k)(6) is not within the scope of the Anti-Injunction Act. The object and purpose of this suit, Kemlon maintains, is not to restrain "the assessment or collection" of taxes but is to prevent disclosure of information. The district court did not accept this argument, nor do we. Section 6103 is not one of the code sections expressly exempted from the Anti-Injunction Act. Nor do we believe the Anti-Injunction Act must be read as literally as Kemlon would read it. The policy behind this statute is "to [protect] the government's need to assess and collect taxes as expeditiously as possible with a minimum of pre-enforcement interference . . . ." *Bob Jones University v. Simon*, 416 U.S. 725, 94 S.Ct. 2038, 40 L.Ed.2d 496 (1974). We agree with the Seventh Circuit that "this ban against judicial interference is applicable not only to the assessment or collection itself, but is equally applicable to activities which are intended to or may culminate in the assessment or collection of taxes." *United States v. Dema*, 544 F.2d 1373, 1376 (7th Cir. 1976), *cert. denied* 429

U.S. 1093, 97 S.Ct. 1106, 51 L.Ed.2d 539 (1977). This rule is reflected in the holdings of several circuit cases which have dealt with the information gathering process of the Service. *United States v. Dema, supra*, (holding that an injunction retraining the Service from issuing subpoenas for taxpayer's books violates the Anti-Injunction Act); *Campbell v. Guetersloh*, 287 F.2d 878 (5th Cir. 1961) (holding that an injunction barring the Service from utilizing the bank deposit and expenditure method of recomputing income violates the Act); *Koin v. Coyle*, 402 F.2d 468 (7th Cir. 1968) (holding that an injunction restraining the Service from using certain evidence is barred by the Act); *Lewis v. Sandler*, 498 F.2d 395 (4th Cir. 1974) (injunction preventing police from furnishing to the Service information about persons suspected of selling narcotics is in the violation of the Act).

Recently, in a different context, the Supreme Court rejected the taxpayer's assertion that an injunction would lie because the injunction would not directly prevent the assessment and collection of taxes. In *Bob Jones University v. Simon*, 416 U.S. 725, 94 S.Ct. 2038, 40 L.Ed.2d 496 (1974), the Court held that the Act prevented a court from enjoining the Service where the Service had revoked a letter ruling of tax exempt status. The Court held, *inter alia*, that the Service's action would require the taxpayer to pay FICA and FUTA taxes and would increase donors' tax liability because their contributions would no longer be deductible. Thus, the Court reasoned, permitting the injunction would restrain the collection of these taxes. 416 U.S. at 738–742, 94 S.Ct. at 2046–2048. *Accord Alexander v. "Americans United,"* 416 U.S. 752, 94 S.Ct. 2053, 40 L.Ed.2d 518 (1974).

---

9. The parties' briefs inform this court that the Service has since determined Kemlon's patents to be of no value and accordingly disallowed Kemlon's depreciable basis in the patents and its depreciation deduction. Kemlon paid a portion of the taxes assessed and filed a claim for a refund. After a denial of the refund claim, Kemlon brought suit in federal district court for a refund of the taxes paid, for damages, and for attorney's fees resulting from the Service's actions. The Service argues that to defend this

refund suit it will be necessary to contact Kemlon's business customers for depositions. Because the injunction is broad in scope and prohibits all contacts by the Service with Kemlon's customers, this appeal is not moot. Kemlon does not argue otherwise.

We express no opinion with respect to the propriety of the Service's action in holding the patents to be of no value after the district court's judgment.

■ We believe the foregoing cases indicate that the instant injunction is well within the scope of the Anti-Injunction Act. We now turn to whether the exception to the Anti-Injunction Act applies.

## JUDICIAL EXCEPTION TO ANTI–INJUNCTION ACT

■ In *Enochs v. Williams Packing & Navigation Co., supra,* and in *Commissioner v. Shapiro, supra,* the Supreme Court has defined a judicially created exception to the Anti-Injunction Act. *Enochs* establishes two prongs, both of which must be satisfied, before an injunction may issue pursuant to § 7421. The first prong is that normal equity jurisdiction must obtain, *i. e.,* irreparable injury and inadequacy of legal remedy. 370 U.S. at 6, 82 S.Ct. at 1128. The second independent criterion is that it must be clear that under "no circumstances" could the government ultimately prevail. Only if the government does not have "a chance of ultimately prevailing" and only if under the "most liberal view of the law and the facts" the United States cannot win, may a district court issue an injunction. 370 U.S. at 7, 82 S.Ct. at 1129.

The Supreme Court in *Shapiro* added a procedural gloss to the second prong of the *Enochs* test. In *Shapiro,* the Commissioner assessed taxes against the taxpayer and filed liens and notices of levy against his assets. Because the taxpayer needed these assets to post bail on pending criminal charges in Israel, he brought suit to lift the notices of levy. The government claimed that the Anti-Injunction Act precluded jurisdiction over the taxpayer's action. The Supreme Court held that because the second prong of *Enochs*—*i. e.,* that it is clear the government could under no circumstances prevail—must be resolved on the basis of the information available to the government at the time of the suit, there must be a mechanism for the taxpayer to

obtain information from the government.[10] Because the government there had produced no factual evidence supporting its assessment, the Supreme Court remanded for further factual development of the record in order that the taxpayer could better argue the second prong of *Enochs.* The Court was concerned in *Shapiro* that permitting the government to seize and hold property on the basis of a good-faith allegation of an unpaid tax would raise serious constitutional problems. 424 U.S. at 629, 96 S.Ct. at 1071. The Court made clear that the burden of persuasion still remained with the taxpayer on the second prong,[11] but held there must be some means by which a taxpayer could obtain information from the government with respect to this issue.

■ After a thorough review of the record, we conclude that Kemlon failed to satisfy the first prong of the *Enochs* exception. We do not accept Kemlon's assertion that the Service waived any right to contest the existence of irreparable harm and inadequacy of a legal remedy. The statements by the Service's attorney at the September 8, 1978, hearing upon which Kemlon relies are ambiguous at best and do not support a finding of waiver of this issue. Moreover, the remainder of the record demonstrates the Service adamantly argued that Kemlon had not satisfied its burden of showing irreparable harm. In two separate memoranda, one supporting the Service's motion to dismiss and the other supporting its motion for the court to reconsider its May 22 order requiring disclosure of the specific questions, the Service argued that Kemlon had failed to plead sufficiently and to prove irreparable harm. (Record on Appeal, pp. 31–33 and pp. 100–101). At the March 29, 1978, hearing, the government suggested that if Kemlon were to put its evidence supporting its allegation of irreparable harm in affidavit form, a hearing on wheth-

---

**10.** The Supreme Court took no position on whether the government has the burden of producing evidence, or whether the taxpayer has the burden of initiating discovery to bring forth the evidence in the government's hands. 424 U.S. at 628, 96 S.Ct. at 1070.

**11.** *Accord James v. United Sates,* 542 F.2d 16 (6th Cir. 1976), *cert. denied* 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540 (1977); *Schildcrout v. McKeever,* 580 F.2d 994 (9th Cir. 1978), and cases cited therein.

er *Shapiro* required disclosure of the questions to be asked Kemlon's customer might be avoided. (Supp. Record on Appeal, pp. 32–33). In the September 8, 1978, hearing, the Service expressly stated there had been no stipulation with respect to the irreparable harm issue; rather the Service said that part of its argument was based on this element of the *Enochs* exception. (Supp. Record on Appeal, pp. 44–45). In the discussion of whether there had been a stipulation of irreparable harm, Kemlon indicated it would stand on Ring's affidavit as proof of irreparable harm. (Supp. Record on Appeal, p. 43).

■ Turning to the pleadings and evidence relating to irreparable harm, we note that Kemlon pleaded nothing more than its largest customers are interested in doing business only with those technological and research-oriented companies which are considered financially stable, and that disclosure of return information [12] to its customers would result in a loss of business reputation and the opportunity to work on new and other unique products for which patents could be available. (Record on Appeal, pp. 5–6). No specific facts were alleged; only the foregoing conclusory pleading. The affidavit of Ring, which Kemlon expressly adopted as establishing irreparable injury, merely repeated the above allegation with an additional assertion that Kemlon's customers are interested only in technological and research companies stable in the areas of acquiring raw materials for

inventory, the manufacturing process, quality control process, and the distribution process. (Record on Appeal, p. 126). The whole thrust of Kemlon's pleading and argument below was that irreparable harm would result through a loss of customers who would be concerned about Kemlon's financial well-being should they learn that Kemlon was being audited and its valuation of a certain patent was being examined. We emphasize that Kemlon in no way asserted or proved in the court below that irreparable harm would result because of the disclosure of confidential or secret information concerning the patent or other device.[13] Before this court, Kemlon has suggested that the purpose of this suit is to prevent disclosure by the government of confidential research and development data. Insofar as Kemlon is now arguing that irreparable harm would result because of customers' concern over disclosure of confidential data, such an argument is raised for the first time on appeal and shall not be heard.

■ To describe Kemlon's allegation of irreparable harm is to decide this case.[14] Kemlon in effect has alleged, in conclusory fashion, that disclosure of the fact that it is under audit will cause it to lose customers because of concern for its financial instability. It in no way alleged or proved facts indicating how its customers would infer financial instability from knowledge of an audit. It in no way alleged or proved facts showing how disclosure of an examination into the

12. In defining "return information" in its complaint, Kemlon only quoted the part of the definition of "return information" in § 6103(b)(2) which says such information includes the identity of the taxpayer and whether or not the taxpayer's return is being, or will be, audited. Kemlon did not cite the part of § 6103(b)(2) which includes as "return information . . . any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return . . . ."

13. In arguments concerning the Service's motion to dismiss, the Service characterized Kemlon's allegation as irreparable harm resulting from disclosure of the fact that it was under audit examination and not from the content of the questions to be asked. (Record on Appeal, p. 101). In response to this argument, Kemlon did not contest the characterization of how

irreparable harm would occur, but again asserted that injury would result from any appearance of financial instability. (Record on Appeal, pp. 113–115).

14. As we read the Findings of Fact and Conclusions of Law of the district court, it did not find that Kemlon had met its burden of proving the first prong of *Enochs*, but instead improperly placed the burden of proof on the Service and found that burden not met. The district court first found that Kemlon had "claimed" irreparable harm, and then found that the Service had offered no evidence to controvert Kemlon's "claim" of irreparable injury. Combining those two findings, the district court concluded that disclosure of the return information would result in irreparable harm.

value of its patents would indicate financial instability. It very well may be that in the industry of research and development, customers are sensitive to the financial stability of researchers. But that in no way indicates that customers of technologically innovative products would assume developers are financially unsound merely from the fact of an audit. Given the frequency of audits of companies as large as Kemlon, and given the stringent policy not to interfere with the tax collection process as reflected by the Anti-Injunction Act, Kemlon had to plead and prove more to demonstrate irreparable harm resulting from disclosure of an audit.[15] We conclude that Kemlon has failed to meet its burden of proof of irreparable harm as specified by *Enochs* and *Shapiro*.

█ Even assuming *arguendo* that Kemlon met its burden of proving irreparable harm, we conclude that the government has met the *Shapiro* requirement of coming forward with the basic facts from which it appears the government may prevail on Kemlon's § 6103(k)(6) claim.[16] Section 6103(k)(6) states that an Internal Revenue officer may disclose return information for investigative purposes to the extent such information is "necessary" and is "not otherwise reasonably available." Temp.Treas. Reg. § 404.6103(k)(6)–1(b)(1) (1977), provides that return information may be disclosed for the purpose of securing necessary information in establishing "the correctness or completeness of any return . . . or return

information."[17] The government in the affidavit of Agent Brown established that it was seeking to determine whether any portion of the patents' value should be allocated to goodwill and to determine the patents' useful life. Such an inquiry would in all likelihood necessitate an interview with customers to determine why they deal with Kemlon and use the product in question and their projected future use of the product. The questions as generally described by Agent Brown are aimed at a determination of these facts. Kemlon claims that this information is "otherwise reasonably available,"—*i. e.*, through Kemlon. Agent Brown swore that use of Kemlon as intermediary would detract from the probity of the customer's responses, and that a direct contact would be necessary to ensure that responses were candid. All *Shapiro* requires is that the government establish basic facts from which it appears it may prevail. Viewing the law and the facts liberally in favor of the Service, as we must,[18] we conclude the Service has amply established the possibility that it will prevail on the § 6103(k)(6) claim.

REVERSED.

█

---

**15.** The Service maintains on appeal that Kemlon has an adequate remedy at law under 26 U.S.C.A. § 7217, authorizing civil action for damages for the unauthorized intentional or negligent disclosure of return information protected by § 6103. We express no opinion on the adequacy of such a remedy.

**16.** The Service argues that the constitutional concern in *Shapiro* makes that case inapplicable to the instant case where no property would be seized by the Service's contact with Kemlon's customers. Because of our holdings, there is no need to address the validity of the Service's argument that *Shapiro* is limited to cases raising a constitutional concern. Comparison should be made to the only two circuit court cases applying *Shapiro*, *Schildcrout v. McKeever*, 580 F.2d 994 (9th Cir. 1978); *James*

*v. United States*, 542 F.2d 16 (6th Cir. 1976), *cert. denied* 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540 (1977), where wagering assessments had been made but no property seized. The Service's argument concerning the limitation of *Shapiro* apparently was not addressed in those cases.

**17.** This temporary regulation was promulgated as part of the Temporary Regulations on Procedure and Administration under the Tax Reform Act of 1976.

**18.** *Enochs v. Williams Packing & Navigation Co.*, 370 U.S. at 7, 82 S.Ct. at 1129; *see also Schildcrout v. McKeever*, 580 F.2d 994, 1000 (9th Cir. 1978).