GARY P. HARRIS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; JOHN P. AND SHERI L. HARRIS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Harris v. Commissioner
Docket Nos. 13909-91, 13984-91
United States Tax Court
T.C. Memo 1993-230; 1993 Tax Ct. Memo LEXIS 238; 65 T.C.M. (CCH) 2779; May 25, 1993, Filed *238 For petitioners: Kenneth G. Gordon and Mortimer L. Laski. For respondent: Thomas R. Lamons and Tracy E. Stetson. HAMBLEN
HAMBLEN
MEMORANDUM OPINION HAMBLEN, Chief Judge: These cases are before the Court on petitioners' motions for administrative and litigation costs [1] pursuant to Rule 231. Respondent determined deficiencies in and additions to petitioners' Federal income tax as follows: Petitioner
Docket No.
Gary P. Harris
13909-91
Taxable Year
December 1987
December 1988
December 1989
Deficiency
$ 4,059
$ 4,575
$ 14,597
Additions to Tax
Sec. 6653(a)(1)(A)
203
- - Sec. 6653(a)(1)
-
229
- Sec. 6653(a)(1)(B)
[1] - - Sec. 6662
-
- 2,505
*239 Petitioners
Docket No.
John P. Harris and Sheri L. Harris
13984-91
Taxable Year
December 1987
December 1988
December 1989
Deficiency
$ 77,987
$ 51,249
$ 37,247
Additions to Tax
Sec. 6653(a)(1)(A)
3,899
- - Sec. 6653(a)(1)
- 2,562
- Sec. 6653(a)(1)(B)
[1] - - Sec. 6661
19,199
12,812
- Sec. 6662
- - 7,449
These cases were settled prior to trial. The stipulations as to settled issues were filed with the Court on December 7, 1992. The parties agree that there are no deficiencies in petitioners' Federal income tax for the taxable years in issue and that petitioners are not liable for any additions to tax. Consequently, the sole issue for decision is whether petitioners are entitled to reasonable administrative and litigation costs under section 7430. All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise *240 indicated. Background
Petitioners in these cases are Gary P. Harris, an individual, and John P. and Sheri L. Harris, husband and wife. John is Gary's father. At the time the petitions in these cases were filed, petitioners resided in Cerritos, California. During the years in issue, John owned a coin-operated laundromat (laundromat). In late December of 1987, John purchased two additional laundromats, one which he owned in partnership with Gary. Petitioners timely filed their Federal income tax returns for the 1987, 1988, and 1989 taxable years. On April 10, 1991, respondent determined deficiencies for the 1987, 1988, and 1989 taxable years. The most significant issue asserted in the notices of deficiency was that petitioners underreported laundromat income. Petitioners kept detailed records of their expenses including canceled checks, invoices, and computerized schedules. However, the only records retained of their gross receipts were deposit records for the laundromat bank account and cash receipts. Petitioners' business is a cash business and gross receipts are inherently difficult to verify. The revenue agent assigned to these cases suspected that petitioners' *241 recordkeeping was inaccurate for several reasons. First, petitioners had failed to maintain records detailing the source of the gross receipts they reported so they had no method of isolating the washer, dryer, or vending income. In addition, deposits were not made daily, and when deposits were made, they were made in rounded dollar amounts, consistently divisible by $ 1 and frequently divisible by $ 5. Petitioners admitted that not all of the cash received was deposited. Petitioners did not deposit amounts set aside for miscellaneous expenses and a monthly cash draw of $ 100. Further, the revenue agent had obtained reliable information that John Harris kept some cash in a safe at home and in a safe-deposit box. Based on petitioners' poor and suspect accounting methods and the inherent difficulty in verifying gross receipts in a cash business, the revenue agent felt it was necessary to reconstruct petitioners' gross receipts. The revenue agent attended a seminar on laundromat ownership and management (seminar). Based on information from the seminar, the revenue agent reconstructed petitioners' laundromat income using a series of formulas and assumptions. The revenue agent *242 computed washer income based on water billed to the laundromat. The revenue agent computed dryer income as a percentage of washer income and vending machine income as a percentage of washer and dryer income. On July 1, 1991, petitioners filed petitions with this Court for redetermination of the deficiencies and additions to tax alleging, among other things, that respondent erroneously determined unreported laundromat income for the 1987, 1988, and 1989 taxable years. Petitioners stated in their petitions that they would establish at or before trial that their tax returns were properly prepared and not prepared negligently or with intentional disregard of the rules or regulations. On August 27, 1991, respondent filed her answer to the petitions denying petitioners' allegations and referred petitioners' cases to an appellate officer for settlement consideration. Petitioners hired Mr. Weisinger to analyze respondent's reconstruction of laundromat income. Mr. Weisinger is a certified public accountant who has owned laundromats and represents approximately 100 clients who have an interest in the laundromat business. On September 26, 1991, Mr. Weisinger's analysis was presented to *243 the appeals officer. The analysis does not dispute the general method used by the agent to reconstruct the laundromat income, but does dispute some of the agent's assumptions and calculations, characterizing them as "generalizations and part truths." Given Mr. Weisinger's position in relation to the laundromat industry, the analysis is self-serving. In addition, it provides only opinion and does not provide any evidence to dispute respondent's determinations. On April 13, 1992, Mr. Steinberg, the president of the company that conducted the seminar, wrote a letter to petitioners' counsel stating that "water waste due to utility sinks, leaks, mopping, toilets, testing and repairing, slugs and similar facets of the operation, in many cases, exceed 5%." In addition, Mr. Steinberg wrote that the percentage of vending income to total washer/dryer income varies between 0 percent and 5 percent. In determining the deficiencies, the revenue agent estimated the water waste factors after visiting the individual laundromats to be .2 percent, .37 percent, and .35 percent. The revenue agent used 10 percent as the ratio of vending income to washer/dryer income based on information gained at *244 the seminar. As with the letter from Mr. Weisinger, Mr. Steinberg's letter is self-serving. In addition, it does not provide evidence to support petitioners' allegations. On June 3, 1992, petitioners' counsel requested that consideration of the cases be deferred until the end of June, to give petitioners an opportunity to document the allegations made in the letters from Mr. Weisinger and Mr. Steinberg. On June 9, 1992, the appeals officer agreed to defer consideration of the case so that petitioners could provide verification. On June 30, 1992, petitioners' counsel wrote to the appeals officer. The letter stated in part: In my letter to you of June 3, 1992 I indicated that we would be developing the factual basis for our belief that the water usage formula used by the agent was incorrect. We have been able to satisfy ourselves, at least, of this belief. If this case goes forward I have no doubt that we can secure the expert opinions which would support what my client's own efforts have determined.
The letter did not provide documentation to verify earlier allegations. Rather, petitioners provided the appeals officer with partial results from testing performed on *245 the washing machines and raised new issues that petitioners believed would undercut the validity of the revenue agent's determination of deficiency. On July 13, 1992, district counsel became involved in the cases after petitioners sent an informal discovery request to respondent. On July 15, 1992, based on issues raised by petitioners in their June 30 letter, the appeals officer revised the income projections and proposed to settle the proceedings based on the revised projections. On August 31, 1992, the parties met to prepare stipulations and exchange information. Petitioners did not bring documents to verify the allegations made in earlier letters. District counsel requested the documentation in letters dated September 2, 1992, September 4, 1992, September 15, 1992, October 6, 1992, and October 16, 1992. After these requests, petitioners provided some of the requested information. After the August 31, 1992, conference, district counsel retained an independent "expert" to prepare for trial. Using the limited documentation provided by petitioners and considering unverified allegations, the "expert" prepared a report on November 6, 1992, that recommended substantial concessions. *246 District counsel returned the case to the appeals officer for further settlement consideration. In the meantime, on November 5, 1992, petitioners mailed 36 items to district counsel to document their allegations. After reviewing the documentation mailed by petitioners, respondent conceded the unreported laundromat income issue and settled the remaining issues. On December 7, 1992, the parties stipulated to all of the issues in the notices of deficiency. Discussion
Section 7430(a) authorizes an award of reasonable administrative and litigation costs to the prevailing party in civil tax litigation. To be eligible for an award, petitioners (1) must have exhausted all administrative remedies available to them, (2) must not have unreasonably protracted the proceedings, (3) must satisfy the statutory definition of a prevailing party, and (4) must show that costs claimed are reasonable. See sec. 7430(b) and (c). Petitioners must establish all of the above elements in order to recover reasonable administrative or litigation costs. Minahan v. Commissioner, 88 T.C. 492, 497 (1987). Our discussion will focus on the third requirement. In order to *247 satisfy the statutory definition of a prevailing party, the petitioners must establish that (1) the position of the United States was not substantially justified and (2) petitioners substantially prevailed with respect to the amount in controversy or the most significant issue. Estate of Huffman v. Commissioner, 978 F.2d 1139 (9th Cir. 1992) (citing Heasley v. Commissioner, 967 F.2d 116, 120 (5th Cir. 1992), affg. in part and revg. in part T.C. Memo. 1991-189). In respondent's notices of objection to petitioners' motions for award of litigation costs, respondent agrees that petitioners have substantially prevailed with respect to the amounts in controversy, and thus need only prove that respondent's position was not substantially justified in order to meet the statutory requirements of a prevailing party. Sec. 7430(c)(4)(A). In determining if respondent's position was substantially justified, [2] *250 the question essentially is one of whether respondent's position in the administrative and judicial proceedings was reasonable.[3] See Heasley v. Commissioner, supra; *248 Coastal Petroleum Refiners, Inc. v. Commissioner, 94 T.C. 685 (1990). A determination of reasonableness must be based upon all the facts and circumstances surrounding the proceeding. Sher v. Commissioner, 861 F.2d 131 (5th Cir. 1988), affg. 89 T.C. 79 (1987); Wasie v. Commissioner, 86 T.C. 962 (1986); De Venney v. Commissioner, 85 T.C. 927 (1985). To satisfy their burden, petitioners must show that legal precedent does not substantially support respondent's position given the facts available to respondent. Rule 232(e); Coastal Petroleum Refiners, Inc. v. Commissioner, supra at 688; De Venney v. Commissioner, supra at 930. We will consider the basis for respondent's position and the manner in which the position was maintained. Wasie v. Commissioner, supra at 969. We may consider, among other factors, whether respondent used the costs and expenses of litigation to extract unjustified concessions from petitioners, whether respondent *249 pursued the litigation to harass or embarrass petitioners, or whether respondent's pursuit of the instant litigation was politically motivated. Rutana v. Commissioner, 88 T.C. 1329 (1987); DeVenney v. Commissioner, supra at 930. Finally, the fact that respondent conceded the cases is not sufficient to establish that a position is unreasonable. Sokol v. Commissioner, 92 T.C. 760, 767 (1989); VanderPol v. Commissioner, 91 T.C. 367, 369 n.3 (1988). The most significant issue raised in the deficiency notices involves petitioners' purported failure to report laundromat income. The machines in petitioners' laundromats require coins for operation. Petitioners alleged that they collected the coins nearly every day and deposited the cash in the bank. They did not deposit any amounts used for miscellaneous expenses and a monthly cash draw of $ 100. Petitioners' records show that deposits, although frequent, were not made on a consistent basis. *251 In addition, petitioners' records indicate incredibly that the "daily" total received from all of the machines was consistently divisible by $ 1 and frequently by $ 5. The bank deposit records were the only records available to corroborate gross receipts. By contrast, petitioners kept detailed records of their expenses including canceled checks, invoices, and computerized schedules. Not only did petitioners fail to keep records of all cash received, petitioners did not keep records that would enable them to isolate the washer, dryer, or vending income. Petitioners' business is solely a cash business for which gross receipts are inherently difficult to corroborate. Petitioners' poor and suspect accounting records properly aroused the concern of the revenue agent. At the time respondent issued the statutory notices of deficiency, and subsequently when petitioners filed their petitions, respondent had a reasonable basis for believing that petitioners had underreported their income. Where a taxpayer fails to keep adequate books and records, respondent is entitled to reconstruct his income by any reasonable means. See Schildcrout v. McKeever, 580 F.2d 994 (9th Cir. 1978); *252 Gordon v. Commissioner, 572 F.2d 193, 195 (9th Cir. 1977), affg. 63 T.C. 51 (1974), supplemented by 63 T.C. 501 (1975). Respondent's determination of a deficiency is presumed to be correct unless petitioners establish otherwise. Welch v. Helvering, 290 U.S. 111, 115 (1933); Keogh v. Commissioner, 713 F.2d 496, 501 (9th Cir. 1983). In addition, whenever there is a factual determination, respondent is not obliged to concede a case until she receives the necessary documentation to prove the taxpayer's contentions. See Sokol v. Commissioner, supra; Brice v. Commissioner, T.C. Memo. 1990-355,affd. without published opinion 940 F.2d 667 (9th Cir. 1991). Moreover, after respondent receives documentation she is given a reasonable period of time in which to analyze the documentation and modify her position accordingly. See Sokol v. Commissioner, supra at 765-766 n.10. Before the parties met on August 31, 1992, petitioners *253 did not provide any substantive information to verify that laundromat income was fully reported. Sometime after that meeting, petitioners provided a limited amount of information. However, it was not until November 1992, one month before the scheduled trial, that petitioners forwarded the bulk of the requested documentation. We conclude that respondent took reasonable means to determine and verify petitioners' correct income tax liability. Although respondent ultimately conceded the main issue raised in the notices of deficiency, she was only able to do so after receiving the help of an expert and the limited information provided by petitioners. Respondent repeatedly requested verifying information. Any delay in these cases was caused by petitioners' failure to provide verification. Had petitioners provided verification for their allegations, this matter could have been resolved promptly. We find that respondent's position was not unreasonable and that petitioners did not incur unnecessary administrative or litigation costs due to respondent's position. See Moran v. Commissioner, 88 T.C. 738 (1987); Brice v. Commissioner, supra. *254 Since petitioners have not proven that respondent's position was unreasonable, petitioners do not qualify as prevailing parties as defined under section 7430(c)(4)(A). Therefore, petitioners are not entitled to reasonable administrative and litigation costs under section 7430. Accordingly, we need not reach the issues of: (1) Whether petitioners exhausted their administrative remedies; (2) whether petitioners unreasonably protracted the administrative and Court proceedings; and (3) whether the amount of administrative and litigation costs which petitioners claimed is reasonable. Accordingly, petitioners' motions shall be denied. An appropriate order will be issued and decisions will be entered.
Footnotes
1. 50% of interest due on $ 4,059↩
1. Petitioners' motions filed with the Court request litigation costs only, but the attachments thereto indicate that petitioners also incurred administrative costs. For proceedings begun after Nov. 10, 1988, the date of enactment of sec. 6239 of the Technical and Miscellaneous Revenue Act of 1988, Pub. L. 100-647, 102 Stat. 3743, sec. 7430(a)↩ provides that any person who is a prevailing party is entitled to reasonable administrative and litigation costs. Consequently, we shall treat the documents filed by petitioners as motions for award of administrative and litigation costs.
1. 50% of interest due on $ 76,797↩
2. These cases are governed by sec. 7430 as amended by the Technical and Miscellaneous Revenue Act of 1988, which is effective for civil tax proceedings commenced after Nov. 10, 1988. Technical and Miscellaneous Revenue Act of 1988, Pub. L. 100-647, sec. 6239(a), 102 Stat. 3342, 3743. As modified by the 1988 amendments, sec. 7430(c)(7)(A) defines the "position of the United States" to mean the position taken by the United States in a judicial proceeding (to which the section applies) and (B) the position taken in an administrative proceeding (to which the section applies) as of the earlier of (i) the date of the receipt by the taxpayer of the notice of the decision of the IRS' Office of Appeals, or (ii) the date of the notice of deficiency. In these cases, there were no separate notices of the IRS' Office of Appeals prior to the issuance of the notice of deficiency. Therefore, for purposes of sec. 7430↩, the United States is considered to have taken a position on April 10, 1991, the date the notices of deficiency were issued by respondent.
3. For civil tax cases commenced after Dec. 31, 1985, sec. 1551(d)(1) of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085, 2752, changed the language describing the position of the United States from "unreasonable" to "not substantially justified". This Court has held that the substantially justified standard does not represent a departure from the reasonableness standard. Sokol v. Commissioner, 92 T.C. 760, 763-764 n.7 (1989); Sher v. Commissioner, 89 T.C. 79, 84 (1987),affd. 861 F.2d 131↩ (5th Cir. 1988).