**MITSUKIYO YOSHIMURA v. ALSUP, Collector of Internal Revenue.**

No. 11584.

Circuit Court of Appeals, Ninth Circuit.

March 30, 1948.

Shiro Kashiwa, of Honolulu, T. H., for appellant.

Theron Lamar Caudle, Asst. Atty. Gen., George A. Stinson, Lee A. Jackson, Frederic G. Rita, and Harry Marselli, Sp. Assts. Atty. Gen., and Ray J. O'Brien, U. S. Atty., and Edward A. Towse, Asst. U. S. Atty., both of Honolulu, T. H., for appellee.

Before GARRECHT, DENMAN, and BONE, Circuit Judges.

DENMAN, Circuit Judge.

This is an appeal from a judgment dismissing a complaint seeking to enjoin the Collector of Internal Revenue from the collection of a tax claimed to be illegal because assessed against appellant upon documents signed by appellant but procured from him by the coercion and fraud of certain government agents.

The question here is whether the record shows the exceptional circumstances under which the tax may be enjoined despite the prohibition of 26 U.S.C.A. Int.Rev.Code, § 3653(a) that "Except as provided in sections 272(a), 871(a) and 1012(a), no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court."

Appellant claims that the following statement of the record shows the exceptional circumstances entitling him to an injunction against the enforcement of the tax within the principles established in Allen v. Regents of University System of Georgia, 1938, 304 U.S. 439, 58 S.Ct. 980, 82 L.Ed. 1448; Miller v. Standard Nut Margarine

Co. of Florida, 1932, 284 U.S. 498, 52 S.Ct. 260, 76 L.Ed. 422; Hill, Jr., et al. v. Wallace et al., 1922, 259 U.S. 44, 42 S.Ct. 453, 66 L.Ed. 822. Appellee's motion to dismiss appellant's complaint alleging the facts later set forth was denied. Appellee answered.

At the hearing of the complaint of the appellant in the United States District Court of Hawaii, the appellee renewed his motion to dismiss, which was denied. Then the appellee moved for judgment on the pleadings, which was also denied.

Thereupon at the hearing, the appellant introduced evidence to the following effect:

The appellant was a subject of Japan with limited education in the English language who operated a service station at Waiau, Oahu, Territory of Hawaii, which was less than a quarter of a mile from Pearl Harbor, Oahu, Territory of Hawaii. Appellant had returned and paid income taxes for the years 1941, 1942 and 1943.

Sometime during 1944, three men from the United States Bureau of Internal Revenue came to his place of business at Waiau to investigate. In the course of the investigation, one of the men discovered a misentry in the appellant's book in the sum of $150.00, and told the appellant that he could be interned for such a mistake, and; thereafter, constantly reminded the appellant during said investigation of such possibility.

At the request of one of the men, Mr. Irey, appellant went to Mr. Irey's office where the appellant was asked to and did sign a statement to the effect that he had defrauded the United States Government in taxes. The appellant was permitted to sign the statement although the appellant failed to understand its nature and significance.

Subsequently, three other men from the United States Bureau of Internal Revenue came to the appellant's place of business at Waiau and advised him to retain a lawyer. Following this advice, the appellant secured the services of Mr. Kashiwa, an attorney at law, who also could practice before the United States Treasury Department.

Finally, two men from the United States Bureau of Internal Revenue came to the appellant's place of business at Waiau to have the appellant sign Forms 870, a copy of which was introduced in evidence. The appellant inquired of these men what the forms were for, and told them that he didn't understand the nature and significance of these forms, and that he wished to see his lawyer, Mr. Kashiwa, before signing the forms. The appellant was told by the men that the forms concerned his taxes and that unless he signed them immediately he would thereby incur the wrath of the boss and thereby possibly suffer a jail term or a huge fine. Whereupon, the appellant signed the forms. Forms 870 which the appellant signed were blank forms, there being no figures whatsoever entered thereon.

The following day, the appellant saw Mr. Kashiwa, his lawyer, and told him about the signing of these Forms 870. Immediately thereupon, Mr. Kashiwa went to see Mr. Glutsch of the United States Bureau of Internal Revenue, who informed Mr. Kashiwa that the Forms 870 signed by appellant had already been mailed to Washington, D. C. Mr. Kashiwa then wrote to the Commissioner of Internal Revenue in Washington, D.C., but to no avail.

As the consequence of signing Forms 870, the appellant was assessed the total sum of $6,325.00 as additional federal income taxes for the years 1941, 1942 and 1943, plus $3,162.51 as penalties therefor.

The appellant was and is in no position whatsoever to pay these taxes and penalties.

Upon the close of the appellant's case, the appellee renewed his motion to dismiss. The motion was granted on the ground that 26 U.S.C.A. Int.Rev.Code, § 3653(a), prohibited the United States District Court for the District of Hawaii from entertaining the suit brought by the appellant. In ruling as aforesaid, the court stated:

"My sympathies are definitely, obviously, with the taxpayer, because I definitely think, if the facts are as the plaintiff's evidence picture them to be, that the representative of the Treasury Department certainly acted arbitrarily and in an unbecoming manner in this case. But no matter how much my sympathies might be with the taxpayer, based on these facts, unless he can successfully bring himself within

the exception to this statute as carved out by the judicial decision, there is nothing much I can do about it. And I am not satisfied that the plaintiff has brought himself within the scope of this limited exception, in that there is no showing either that the tax is illegal or that the lawful tax as applied to this particular plaintiff is illegal. In the absence of such showing, plus a showing that there are unusual and exceptional circumstances, which last point the evidence may meet, I am inclined to grant the motion to dismiss."

Mr. Kashiwa: "Your Honor, if that is the case—I tried to reopen the case for further proof in that there is no such additional amount due."

The Court: "That wouldn't cover the point of the ruling. In other words, in this proceeding it is not permissible for this Court to compute what the tax is or what it should have been. I have no such power as that. So I am not interested in the computation of the tax here, so that I would not allow you to reopen on that point, although the record may show that you offered to reopen on that point and that I will deny your request and you may have an exception on that ground, too."

It is obvious that if relief cannot be granted without showing that the tax assessed on the coerced statements is not owing and the court in which the injunction is sought cannot "compute what the tax is or what it should be," there never can be an injunction issued in cases of such fraud and abuse of powers by the agents of the Internal Revenue Bureau.

We have no doubt that such coercive and fraudulent threats of internment constitute the exceptional circumstance recognized in Hill v. Wallace, 259 U.S. 44, 42 S.Ct. 453, 66 L.Ed. 822, where the injunction was granted because, as stated at page 66 of 259 U.S., at page 457 of 42 S.Ct., the taxing act in question "is in essence and on its face a complete regulation of Boards of Trade, with a penalty of 20 cents a bushel on all 'futures' *to coerce Boards of Trade and their members into compliance.* When this purpose is declared in the title to the bill, and is so clear from the effect of the provisions of the bill itself, it leaves no

ground upon which the provisions we have been considering can be sustained as a valid exercise of the taxing power." (Emphasis supplied.)

See also in Miller v. Standard Nut Margarine Co., 284 U.S. 498, 52 S.Ct. 260, 76 L.Ed. 422, where the injunction was granted for the reason stated at page 510 of 284 U.S., at page 263 of 52 S.Ct.: "It requires no elaboration of the facts found to show that the enforcement of the act against respondent would be *arbitrary and oppressive,* would destroy its business, ruin it financially, and inflict loss for which it would have no remedy at law. It is clear that, by reason of the special and *extraordinary facts and circumstances,* § 3224 [26 U.S.C.A. Int.Rev.Code, § 3224] does not apply. The lower courts rightly held respondent entitled to the injunction." (Emphasis supplied.)

We can see no difference in a coercion by statute and such coercion by the statutory officers for the enforcement of the tax laws. This is "the unusual, the extraordinary case" referred to in our opinion in Matcovich v. Nickell, 9 Cir., 134 F.2d 837, 838; the "gross and indisputable oppression" of Concentrate Mfg. Co. v. Higgins, 2 Cir., 90 F.2d 439, 441; and the "arbitrary or capricious action" of Burke v. Mingori, 10 Cir., 128 F.2d 996, 997 and of Jacoby v. Hoey, 2 Cir., 86 F.2d 108, 109.

Appellee's answer admits that by the signing of Forms 870 consenting to the assessment, appellant was barred from appealing to the Tax Court. However, even were this not so, he was still under the threat of internment or a jail term for the fraud he had been coerced to admit. We take notice of the war psychology of an alien Japanese in Hawaii in 1944 and the many internments there of such aliens.

Assuming that a suit for refund could have been maintained after paying the amount of the coerced assessment, appellant was without funds to make such payment and hence had no remedy at law in that respect. In Miller v. Standard Nut Margarine Co., 284 U.S. 498, 505, 52 S.Ct. 260, 262, 76 L.Ed. 422, it was held that the injunction could be granted where "The enforcement of the Oleomargarine Act [26

U.S.C.A. Int.Rev.Code, § 3653] against respondent would impose a tax that respondent would be unable to pay, would subject it to heavy penalties and the forfeiture of its plant, together with the materials and manufactured produce on hand, and would destroy its business." So also in Hirst & Co. v. Gentsch, 6 Cir., 133 F.2d 247, 248, where "if the Collector, whose duty it is to collect them, proceeds to do so by distraint or levy, the plaintiff will be forced into complete cessation of its mining operations and its business will be ruined."

We think that, on the facts shown at the close of appellant's case, equity requires us to hold that nothing was accomplished by an assessment based on such wrong doing and that the collector is not entitled to collect anything from appellant. We agree with the district court that it is not required to determine the amount of the tax in the instant proceeding. Appellant is entitled to the tax process of proper assessment of any tax deficiency with his right of review thereof. We do not agree with that court that the facts shown are not sufficient to support the injunction sought and think it error to have dismissed the litigation at the close of the appellant's case.

The judgment is reversed, the cause remanded and the court ordered to proceed with the trial.