## WHEELER
v.
**HOLLAND, District Director of Internal Revenue et al.**
Civ. A. No. 4599.

United States District Court
N. D. Georgia, Atlanta Division.

March 2, 1954.

Hal Lindsay, Atlanta, Ga., for plaintiff.

James W. Dorsey, U. S. Atty., Atlanta, Ga., for defendants.

SLOAN, District Judge.

In his complaint, Andrew Jackson Wheeler, the taxpayer, claimed that he was forced to sign a consent to an immediate assessment of taxes (Form 870) under duress. The Government made an assessment of taxes and penalties for the years 1942–1947 on the basis of this consent in the amount of approximately $50,000. At the time this suit was brought the Government had collected approximately $18,000. Since the suit

has been pending no further collections have been made by the Government.

Because of the alleged duress taxpayer claims the consent is void and of no effect and that the assessments premised on such consent should be set aside and declared null and void, that all warrants of distraint issued be quashed; that the Government agents be enjoined and restrained from taking possession of or of applying against the tax any funds of the taxpayer seized under or by virtue of any warrant or notice of distraint upon any bank or banks; and that the Government agents be restrained and enjoined from the making of any levy or levies upon the taxpayer's stock of merchandise, furniture, fixtures and equipment of his business or any other property of the taxpayer.

Taxpayer also sought the refund of taxes which had already been paid under the alleged void assessment. The Government moved to dismiss the suit for refund on the ground that no adequate claim for refund had been filed. This motion was granted without prejudice to taxpayer's right to file a new claim.

The taxpayer alleges that he was coerced to sign the consent to an immediate assessment (without the procedure outlined in Internal Revenue Code Section 272, 26 U.S.C.A.) under duress.

The duress he alleges is based on three contentions:

1. The Government's computation of taxes (agreed to by taxpayer when he signed the Form 870) was so arbitrary and excessive that no one who was not coerced and under duress would have agreed to it.

2. A Government conferee threatened to recommend the assessment of a higher tax if the taxpayer did not agree to the computation underlying the Form 870.

3. A Special Agent who was active in the case threatened to prosecute Mr. Wheeler if he did not sign the Form 870.

### Finding of Facts

Mr. Wheeler did not keep adequate business records. His tax liability, therefore, needs to be computed on the basis of reconstructed records. The Revenue Agent who initially audited Mr. Wheeler's returns computed the taxes and penalties owing for the years 1942–1947 to be in excess of $70,000. This computation was based on a mark-up computation. On October 14, 1949, a thirty-day letter was issued to the taxpayer proposing a deficiency on this basis. Wheeler protested the proposed deficiencies. Numerous conferences were held in an effort to find a basis of settlement mutually satisfactory to the taxpayer and to the Government. The tax was recomputed on the basis of a net worth computation. In February 1951 the Government conferee submitted to Wheeler's chief accountant, Lyle Campbell, a set of figures which produced the liability shown on the Form 870. The basic disagreement between the taxpayer's representatives and the Government in the use of the net worth method resulted from different estimates of Wheeler's net worth at the beginning of the taxable period. Both taxpayer's and the Government's computations are admittedly not perfect. In light of the absence of adequate records, it is unlikely that Mr. Wheeler's true tax liability will ever be known. He now admits that he owes in excess of $10,000 (his original returns for the years 1942–1947 showed a liability of approximately $2,-000) but denies that he should be assessed penalties. From the evidence it cannot be said that the computation, which was the basis for the Form 870, was so arbitrary, capricious or excessive that it could be concluded that Mr. Wheeler must have been under duress or he would not have signed it, or that the Revenue Agents could not have sincerely, properly and fairly settled on the basis of such computation. It may be that Mr. Wheeler does not owe as much as was assessed pursuant to the Form 870, or it may be that he actually owes more taxes than were assessed. On the basis of the record in this case, however, the mere fact that the assessment was made in the amounts shown and on

the theory on which it was based does not justify a conclusion that Wheeler was improperly coerced to sign the consent to assess.

■ The Conferee did not improperly coerce the taxpayer when he announced that if the liability shown in the Form 870 was not agreed to by the taxpayer, he would recommend an assessment in a higher amount. The Court finds that the figures underlying the Form 870 include adjustments which the Government's agents resolved in favor of Mr. Wheeler in order to get him to concede certain issues to the Government. There was a give and take in the computation designed to promote a settlement. If a settlement was not forthcoming, then naturally both parties if forced to a further contest of the issue would not have conceded doubtful issues to the other side. This sort of give and take happens every day in the adjustment of taxpayers' liabilities. It provides no basis for upsetting the Form 870.

■ The Special Agent who worked the case is alleged to have threatened Mr. Wheeler with criminal prosecution and terrorized him to the point where his agreement, as evidenced by the Form 870, should be declared void and of no effect. The Court finds that it has not been shown that the Special Agent ever threatened Mr. Wheeler that if taxpayer did not agree to the Government's computation of his tax, the Special Agent would recommend prosecution in his official capacity or that he would indict Mr. Wheeler in his capacity as private citizen. The Court furthermore finds that the Special Agent did not call Mr. Wheeler a slacker or a black marketeer, nor in any other way abuse his position as a Government Agent. The taxpayer admitted that other than these allegations, which the Court finds not proved by the evidence, no Treasury agents involved in the case acted in an improper manner.

## Conclusions of Law

■ Section 3653 of the Internal Revenue Code prohibits suit for the purpose of restraining the assessment or collection of any tax. Section 3653 states, however, that it is subject to the provisions of Section 272(a). Section 272(a) provides that no assessment of a deficiency in respect of a tax imposed by this chapter and no distraint or proceeding in court for its collection shall be begun or prosecuted until the Government by registered mail notifies the taxpayer of a proposed deficiency nor until the expiration of ninety days thereafter, nor if a petition has been filed with the Tax Court within that ninety-day period until the decision of the Tax Court has become final. It further states: "Notwithstanding the provisions of section 3653(a) the making of such assessment or the beginning of such proceeding or distraint during the time such prohibition is in force may be enjoined by a proceeding in the proper court." The Form 870 which the taxpayer signed on April 18, 1951, was an explicit waiver of the procedure outlined in Section 272(a). Unless it is declared void, therefore, Section 3653 bars a suit such as the taxpayer has brought here.[1]

---

1. While the prohibition expressed in Section 3653 does not admit of exception, the courts granted relief in rare and unusual situations involving extraordinary circumstances. See Miller v. Standard Nut Margarine Co., 284 U.S. 498, 52 S.Ct. 260, 76 L.Ed. 422. The courts have narrowly interpreted their own judicial exception. See, e.g., Concentrate Mfg. Corp. v. Higgins, 2 Cir., 90 F.2d 439; Sturgeon v. Schuster, 10 Cir., 158 F.2d 811. This case, like the Yoshimura case, cited in the text, is not the typical injunction case.

Taxpayer seeks relief under the specific statutory requirement rather than the judicial gloss. If the Form 870 is not void, it is clear that he is not entitled to an injunction. If the form is void, then no additional extraordinary circumstances need be shown to justify the injunction. The Courts' reluctance to enjoin the administration of the revenue laws requires that an assessment not be voided unless there is a clear showing of improper coercion (an extraordinary circumstance), but if such a showing is

The case cited by the taxpayer in oral argument, Mitsukiyo Yoshimura v. Alsup, 9 Cir., 167 F.2d 104, is the main support of taxpayer's legal position. If there was duress in this case of a kind that appeared in that case, the Government agrees and this Court believes that Mr. Wheeler would be entitled to the relief he seeks. A summary of facts in that case, however, indicates clearly that there was no such duress applied to Mr. Wheeler in this case. Yoshimura, a subject of Japan, with limited knowledge of English, operated a service station in Hawaii. In 1944 three Revenue Agents came to his place of business to investigate his taxes. In the course of the investigation, one of the Agents discovered a mis-entry in the appellant's books in the sum of $150 and told him that he could be interned for such a mistake and thereafter constantly reminded Yoshimura during the investigation of the possibility of internment. At the Agent's request Yoshimura signed a statement that he had defrauded the United States Government in taxes. He was permitted to sign the statement although he failed to understand its nature and significance. Subsequently, Yoshimura retained a lawyer, Mr. Kashiwa. Thereafter, two Agents came to Yoshimura's place of business and required him to sign blank Forms 870 although the taxpayer did not know the purpose of the forms and told the Agents he did not understand their nature and significance and that he wished to see his lawyer before signing. The Agents told him that unless he signed immediately he would incur the "wrath of the boss" and thereby possibly suffer a jail term or a huge fine. The following day when Mr. Yoshimura's attorney learned of what had happened, he went to the Internal Revenue office and requested the return of the forms. When he was informed that they had been sent to Washington, he wrote to the Commissioner but with no avail. The court found that coercive and fraudulent threats of internment constituted the type of exceptional circumstances justifying the restraint of collection of taxes. In the course of its opinion, the Ninth Circuit stated, 167 F.2d at page 106: "We take notice of the war psychology of an alien Japanese in Hawaii in 1944 and the many internments there of such aliens."

In this case the evidence shows that when Mr. Wheeler signed the Form 870, he was represented by counsel, Mr. Robert P. McLarty, and that he understood the significance of the Form 870. The form was completely filled out and was not in blank. No threats were made to Wheeler that if he did not sign, he would be prosecuted or interned. The wartime reaction against Japanese aliens in Hawaii has no counterpart in this case. While taxpayer's accountant was not present at the signing of the Form 870, there is no showing that the meeting could not have been postponed if the taxpayer wished him to be present. Indeed, Mr. McLarty testified that the reason he recommended that Mr. Wheeler and he attend the conference without the accountant, Campbell, was that the meeting had previously been postponed a number of times. The evidence also indicates that the first notice that the Government had that Mr. Wheeler wished to contest the validity of the Form 870 was in the claim for refund filed in June 27, 1952, some fourteen months after the agreement was signed.[2] He did not state that he was signing the agreement because he feared criminal prosecution and the Government agents were not aware of his fear at that time. The testimony indicates that had Wheeler promptly advised the Government that he wished to withdraw his consent to assessment, under the prac-

---

made, a general concern for the revenue will not be permitted to defeat an individual's rights to fair play under the law.

2. On oral argument taxpayer's counsel stated that the Collector had been advised of taxpayer's contention in a letter forwarding a $15,000 partial payment. This letter was not submitted and is not part of the evidence in this case.

tice by the Revenue Service in Georgia, his request would have been granted.

█ The extreme circumstances which would be required to support the voiding of the Form 870, thereby permitting the restraint of the collection of the assessment, are not present and, therefore, taxpayer's request for relief will not be granted.

This is not to deny that Mr. Wheeler might not have signed the Form 870 if he did not feel that there was a danger that he might be prosecuted nor that he believed that the consummation of the settlement with the Internal Revenue Service, as expressed in the Form 870, would make it fairly certain that prosecution would not thereafter be recommended. This is not to deny that Mr. McLarty, taxpayer's counsel, advised Mr. Wheeler to sign the form even though he may have thought Wheeler probably did not owe as much taxes as appeared nor that he was motivated in this recommendation by a desire to insure that no criminal proceedings would be had.

At one time the possibility of criminal prosecution was under active consideration by the Government agents. The taxpayer's representatives were advised of this and Wheeler himself was told about his constitutional rights against self-incrimination. Furthermore, though not universally known, it is fairly common knowledge among those familiar with Bureau practices in fraud cases that Special Agents are responsible for fraud investigations. All of taxpayer's representatives testified that they were aware of this and they so advised the taxpayer.

In November, 1949, however, the Special Agent in this case submitted his report in which he recommended that no criminal proceedings be had but that civil fraud penalties be assessed. The Special Agent in Charge, E. C. Palmer, approved this report. Thereafter and not before, negotiations were begun with the taxpayer to settle the civil aspects of the case. A copy of the Special Agent's report in which prosecution was declined was not furnished to the taxpayer or to his representatives. It is not the policy of the Government to make such reports available because of the confidential nature of the information often appearing therein.[3] It is the policy of the Government, however, to refrain from discussing the civil aspects of the case until the criminal aspects have been resolved. While this is an established policy and no exceptions to it were recollected by any of the witnesses appearing in the case, it cannot be assumed that the policy is universally known. The taxpayer and his attorney and one of the accountants, who had not handled a case in which fraud was suspected prior to this one, all testified that they did not know of the Internal Revenue Service's established policy in this regard. Another of Mr. Wheeler's representatives, E. D. Bailey, who did most of the actual work on the case, did know of the policy but did not inform the taxpayer or his co-representatives of its existence, even though he knew that Mr. Wheeler was concerned about the possibility of criminal prosecution.[4]

█ It seems that Mr. Wheeler, having once been advised about the possibility that he would be indicted and having been advised by his representatives that such indictment was still a possibility, continued to be afraid that prosecution

3. While there was testimony by the Special Agent that he specifically advised the taxpayer that the criminal aspects of the case were no longer being considered, there is a good deal of evidence that the taxpayer in fact was concerned about the possibility of criminal prosecution at the time the Form 870 was filed.

4. E. D. Bailey did not have completely harmonious relations with the agents in this case. He stated that the Special Agent called him a liar and threatened to fight with him. The Special Agent denies this but states that Bailey was insulting and had to be requested to stay with the merits of the case. At one point the Conferee requested Mr. Campbell, the taxpayer's chief accountant, not to bring Mr. Bailey to the conference. The Court makes no findings as to blame in respect to these bickerings.

might eventuate and signed the Form 870 to preclude that possibility even though he disagreed with the computations on which it was predicated. That such a fear was a factor in his signing the form is not enough to void his consent. The fear was not created by any improper conduct on the part of the Government officials.