CHURCH OF SCIENTOLOGY OF CALIFORNIA, Plaintiff–Appellant,

v.

UNITED STATES of America and Sandra Baker, Revenue Officer, Defendants–Appellees.

No. 90–55514.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 5, 1990.

Decided Dec. 12, 1990.

William T. Drescher, Calabasas, Cal., and Kendrick L. Moxon, Bowles & Moxon, Hollywood, Cal., for plaintiff-appellant.

Shirley D. Peterson, Asst. Atty. Gen., Gary R. Allen, William A. Whitledge, and Teresa E. McLaughlin, Tax Div., U.S. Dept. of Justice, Washington, D.C., for defendants-appellees.

Before ALARCON and NORRIS, Circuit Judges, and GEORGE,* District Judge.

ALARCON, Circuit Judge:

The Church of Scientology of California (Church) appeals from the denial of its request for a preliminary injunction against the Internal Revenue Service (IRS). The district court concluded it lacked subject matter jurisdiction and, therefore, was precluded from granting this relief by the Anti–Injunction Act, 26 U.S.C. § 7421. The Church contends that the record demonstrates that the district court has the jurisdiction to grant equitable relief pursuant to the judicial exception to the Anti–Injunction Act. We disagree and affirm.

I

This case arises from an action filed by the Church against the IRS in which it alleged:

1. Wrongful disclosure of taxpayer information under 26 U.S.C. § 6103 by improperly issuing bank levies and individual assessments.

2. Violation of the First Amendment of the United States Constitution by engaging in unlawful and arbitrary actions against the Church motivated "by an impermissible hostility to the scientology religion."

3. Violation of the due process clause of the Fifth Amendment by treating the Church and its parishioners differently from other religions.

4. Violation of the due process clause by failing to follow established IRS policy.

5. Violation of the "Taxpayers Bill of Rights" by improperly assessing the bank levies and individual assessments.

The Church presented the following version of the facts in its complaint and supporting declarations: On March 9, 1989 the IRS issued a notice of proposed adjustment of Federal Insurance Contribution Act (FICA) and Federal Unemployment Tax Act (FUTA) taxes for the tax years of 1976–1986 based upon a disallowance of the Church's tax exempt status.[1] On April 7, 1989, the Church filed a protest with the IRS challenging each proposed adjustment. The IRS rejected the protest. A supplemental protest filed on May 22, 1989, was also rejected.

Assessments were made by the IRS in July and August of 1989. Thereafter, the Church entered into discussions with Stanley Kong, IRS Examinations Branch Chief. Kong told the Church that if it made a token payment of the FICA and FUTA taxes for one employee for the period in question and submitted claims for refund and abatement the IRS would forbear at-

---

* Honorable Lloyd D. George, United States District Judge for the District of Nevada, sitting by designation.

1. In 1987, in *Church of Scientology of California v. Commissioner of Internal Revenue,* 823 F.2d 1310 (9th Cir.1987), *cert. denied,* 486 U.S. 1015, 108 S.Ct. 1752, 100 L.Ed.2d 214 (1988), we upheld a revocation of the Church's tax exempt status for the years 1970–1972. Among the factual findings in that case were that significant sums of Church money had inured to the bene- fit of the Church's founder L. Ron Hubbard and his family during the years in question. These benefits included the transfer of several million dollars in Church funds to a sham corporation controlled by Hubbard and a plan by which 10% of the gross income of all Scientology congregations, franchises and organizations were to be paid directly to Hubbard as "debt repayments." *Id.* at 1318–19.

tempting to collect the balance of the assessment while such claims were being considered. On September 22, 1989, the Church made payment of the FICA and FUTA taxes for one employee for the period in question and submitted claims for refund and abatement.

On October 23, 1989, Revenue Officer Sandra Baker contacted Church representatives in order to commence collection of the claimed deficiency. The Church alleges that Baker agreed that pursuant to IRS policy P–5–16, as set forth in the Internal Revenue Manual, she would forbear from attempting to collect additional funds while the administrative refund claims were pending. On January 5, 1990, Baker wrote the Church's counsel and requested a list of the Church's officers so that the IRS could make assessments for the asserted tax deficiencies directly against the responsible Church officials as authorized by 26 U.S.C. § 6672.[2] The Church informed Baker that it challenged both the legitimacy of the individual assessments, and the appropriateness of any other tax collection activities while its refund claim was under consideration.

On April 4, 1990, Baker served seven notices of levy to selected banks. On April 6, 1990, the IRS mailed assessments against twenty-four individuals, including the late L. Ron Hubbard, for the purported tax deficiencies. The Church requested that the IRS release the levies. The IRS refused to do so.

On April 24, 1990, the Church filed this action in the district court. On the same date, the district court granted the Church's *ex parte* request and issued a temporary restraining order (TRO) to maintain the status quo of the parties and an order to show cause (OSC). On May 5, 1990, the Government filed its response to the OSC. The Government asserted that the district court lacked subject matter jurisdiction to grant injunctive relief under the Anti–Injunction Act, 26 U.S.C. § 7421. In support of its claim the Government sub-

mitted a declaration signed by Baker. Baker declared that all applicable IRS regulations were complied with in making the assessment against the Church. She also declared that the Church was challenging only a part of the asserted deficiency. She declared further that the Church did not dispute that it owed $6,500,000 in taxes and interest to the Government. Baker's declaration also sets forth the factual basis for levying on each bank and how the identities of the individuals to be assessed were determined. The declaration did not include any discussion of Baker's representations to the Church concerning forbearance. The district court denied the Church's request for injunctive relief before the date set for filing of the Church's reply to the IRS's response to the OSC.

## II

The Church contends that the Anti–Injunction Act does not apply when the record shows an unlawful or unconstitutional levy and extraordinary circumstances. The Church also asserts that it has met the judicial exception to the Anti–Injunction Act.

■ The Anti–Injunction Act, 26 U.S.C. § 7421(a) provides that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed." The Anti–Injunction Act sets forth specific exceptions which, if present, will support the granting of equitable relief. The Church does not contend that the statutory exceptions are applicable to this case.

The Supreme Court has explained that the principal purpose of the Anti–Injunction Act is to preserve the Government's ability to assess and collect taxes expeditiously with "a minimum of preenforcement judicial interference" and "to require that the legal right to the disputed sums be

---

**2.** "Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect any such tax, ... or willfully attempts in any manner to evade

or defeat any such tax or payment thereof, shall ... be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over."

determined in a suit for refund." *Bob Jones Univ. v. Simon,* 416 U.S. 725, 736, 94 S.Ct. 2038, 2045, 40 L.Ed.2d 496 (1974) (citing, *Enochs v. Williams Packing & Navigation Co.,* 370 U.S. 1, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962)).

We review *de novo* the denial of a motion for preliminary injunction for lack of subject matter jurisdiction. *Elias v. Connett,* 908 F.2d 521, 523 (9th Cir.1990) (citing *Jensen v. IRS,* 835 F.2d 196, 198 (9th Cir.1987). The district court's factual findings on jurisdictional issues must be accepted unless clearly erroneous. *Id.*

The Church relies upon *Singleton v. Mathis,* 284 F.2d 616, 618–19 (8th Cir.1960), *Lassoff v. Gray,* 266 F.2d 745, 747 (6th Cir.1959), and *Monge v. Smyth,* 229 F.2d 361, 366 (9th Cir.), *cert. denied,* 351 U.S. 976, 76 S.Ct. 1055, 100 L.Ed. 1493 (1956) in support of the proposition that an injunction may be ordered if the court finds that an unlawful or unconstitutional levy has been issued and if extraordinary circumstances are shown. The Church's reliance on the continued vitality of these decisions is misplaced. Each of these cases was decided prior to the 1962 Supreme Court decision in *Enochs v. Williams Packing & Navigation Co.,* 370 U.S. 1, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962). Rather than providing a separate and independent exception to the Anti–Injunction Act, the Supreme Court has instructed that these decisions are part of an earlier generation of dissonant case law which was harmonized in the *Williams Packing* decision. In *Bob Jones University,* the Supreme Court stated that:

the Court's unanimous opinion in *Williams Packing* indicates that the case was meant to be the capstone to the judicial construction of the Act. It spells an end to a cyclical pattern of allegiance to the plain meaning of the Act, followed

by periods of uncertainty caused by a judicial departure from that meaning, and followed in turn by the Court's rediscovery of the Act's purpose.

416 U.S. at 742, 94 S.Ct. at 2048. The Court's decision in *Bob Jones* forecloses any reliance on the pre-*Williams Packing* decisions cited by the Church. In 1964, the Sixth Circuit disavowed its decision in *Lassoff v. Gray* as being in conflict with the *Williams Packing* test. *Vuin v. Burton,* 327 F.2d 967, 970 (6th Cir.1964). Similarly, in *United States v. Dema,* 544 F.2d 1373, 1376 (7th Cir.1976), *cert. denied,* 429 U.S. 1093, 97 S.Ct. 1106, 51 L.Ed.2d 539 (1977), the *Singleton* case was only cited within the context of requirements of the *Williams Packing* test. We have not applied that portion of the *Monge* decision that recognized an exception to the Anti–Injunction Act based on unusual and extraordinary circumstances since the *Williams Packing* decision was published.[3]

The Supreme Court now recognizes a single, narrow judicial exception to the Anti–Injunction Act.

[A]n injunction may be obtained against the collection of any tax if (1) it is "clear that under no circumstances could the government ultimately prevail" and (2) "equity jurisdiction" otherwise exists, i.e., the taxpayer shows that he would otherwise suffer irreparable injury.

*Commissioner v. Shapiro,* 424 U.S. 614, 627, 96 S.Ct. 1062, 1070, 47 L.Ed.2d 278 (1976) (quoting *Enochs v. Williams Packing & Navigation Co.,* 370 U.S. 1, 7, 82 S.Ct. 1125, 1129, 8 L.Ed.2d 292 (1962)).

■ Under the first prong of the *Williams Packing* test, the district court must determine the possibility of success of the Government's assessment based upon the information available to the court

---

3. In *Monge,* we followed the line of cases which stated that an injunction may be granted where "unusual and extraordinary circumstances appear." 229 F.2d at 366. While *Monge* has been cited four times by this court since *Williams Packing,* it has never been for that proposition. *See, Whitney v. United States,* 826 F.2d 896, 897 (9th Cir.1987) (whether Form 870–AD standing alone estops taxpayer from seeking a refund); *Meridian Wood Prod. Co. v. United States,* 725

F.2d 1183, 1186 (9th Cir.1984) (waiver obviated need for sending formal deficiency notice); *Wood v. Sargeant,* 694 F.2d 1159, 1161 (9th Cir.1982) (inability to pay tax is not a basis for invoking equity jurisdiction); *Richmond v. Weiner,* 353 F.2d 41, 45 (9th Cir.1965) (court cannot consider issue concerning pleadings that had not been raised in district court), *cert. denied,* 384 U.S. 928, 86 S.Ct. 1447, 16 L.Ed.2d 531 (1966).

at the time of the filing of the action. "Only if it is then manifest, under the most liberal view of the law and the facts, that the government cannot prove its claim" is the first part of the test satisfied. *Thrower v. Miller*, 440 F.2d 1186, 1187 (9th Cir. 1971). The burden of showing that the Government's claim is baseless is on the taxpayer. *Schildcrout v. McKeever*, 580 F.2d 994, 997 (9th Cir.1978) (citing *Shapiro*, 424 U.S. at 627–29, 96 S.Ct. at 1070–72.)

To meet the second prong of the *Williams Packing* test, the taxpayer must demonstrate that it is entitled to equitable relief. "The taxpayer must show that he has no adequate remedy at law and that the denial of injunctive relief would cause him immediate, irreparable harm." *Jensen v. IRS*, 835 F.2d 196, 198 (9th Cir.1987) (citing *Cool Fuel, Inc. v. Connett*, 685 F.2d 309, 313–14 (9th Cir.1982)). Both prongs of the test must be met or a suit for injunctive relief must be dismissed. *Alexander v. "Americans United" Inc.*, 416 U.S. 752, 758, 94 S.Ct. 2053, 2057, 40 L.Ed.2d 518 (1974).

■ The limitations imposed by the Anti–Injunction Act also apply to the Church's attempt to enjoin "wrongful disclosures" in the form of the bank levies and individual assessments claimed to be made in violation of 26 U.S.C. § 6103.[4] In *Blech v. United States*, 595 F.2d 462 (9th Cir.1979), we stated that where the underlying action was one to enjoin assessment and collection activities, it fell within the scope of the Anti–Injunction Act's prohibitions. *Id.* at 466.

> To hold otherwise would enable ingenious counsel to so frame complaints as to frustrate the policy or purpose behind the Anti–Injunction Statute.... Likewise, this statutory ban against judicial interference with the assessment and collection of taxes "is equally applicable to activities which are intended to or may culminate in the assessment or collection of taxes."

*Id.* (quoting *United States v. Dema*, 544 F.2d 1373, 1376 (7th Cir.1976), *cert. denied*, 429 U.S. 1093, 97 S.Ct. 1106, 51 L.Ed.2d 539 (1977)). *Accord, Lowrie v. United States*, 824 F.2d 827, 830 (10th Cir.1987). The Fifth Circuit has also held that an injunction sought under § 6103 was barred by the Anti–Injunction Act. *Kemlon Products & Development Co. v. United States*, 638 F.2d 1315, 1320 (5th Cir.), *modified*, 646 F.2d 223 (5th Cir.), *cert. denied*, 454 U.S. 863, 102 S.Ct. 320, 70 L.Ed.2d 162 (1981).

The Church relies on *Husby v. United States*, 672 F.Supp. 442 (N.D.Cal.1987) for the proposition that an injunction may issue to prevent further disclosure of tax return information through collection activities. In *Husby* however, the Government agreed with the taxpayer that no taxes were in fact owing. The Government further admitted in court, prior to the issuance of the injunction, that the assessment and all collection activity pursuant to it were due to computer error. *Id.* at 444. No challenge under the Anti–Injunction Act was made, and the court expressly stated that "[t]he case at hand presents no problem as to collateral attack of a levy or assessment." *Id.* at 445. The only issue before the district court was whether the statutory remedies of 26 U.S.C. § 7431 applied to the erroneous levy. *Id.* at 442.

■ To avoid the bar of the Anti–Injunction Act, the Church has the burden of establishing that "under the most liberal view of the law and the facts, the United States cannot establish its claim...." *Schildcrout v. McKeever*, 580 F.2d 994, 998 (9th Cir.1978) (quoting *Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1, 7, 82 S.Ct. 1125, 1129, 8 L.Ed.2d 292 (1962)). As noted above, the declaration of Baker is in conflict with that relied upon by the Church concerning the appropriateness of the levy, and whether wrongful disclosures were made, as well as the circumstances surrounding the issuance of the individual

---

**4.** Section 6103(a) states that returns and return information are confidential, "and except as authorized by this title–(1) no officer or employee of the United States, ... shall disclose any return or return information." It is not disputed that "return information" can include the fact that a taxpayer's liability is or has been under investigation.

assessments. Baker declared that since $6,500,000 in assessed taxes were not challenged by the Church, it was determined that efforts to collect the amount were thought to be appropriate.

Where the record presents "material issues of disputed fact" the district court lacks jurisdiction to grant an injunction. *Kaestner v. Schmidt*, 473 F.2d 1294, 1296 (9th Cir.1973) (Anti–Injunction Act bars jurisdiction where evidence in Government affidavits established material issues of disputed fact.) *Accord, Thrower v. Miller*, 440 F.2d 1186, 1187–88 (9th Cir.1971) (Anti–Injunction Act barred relief where affidavits of appellee and his attorney conflicted with affidavit of IRS officer.)

▮ The Church asserts that because the IRS represented that it would forbear collecting the asserted deficiencies pending IRS determination of the Church's refund claim, the Government's attempts to levy an assessment thereafter constituted "fraudulent coercion" or "fraudulent representations" as a means of tax collection. This contention cannot be supported under the most liberal view of the record in favor of the Government.

The cases cited by the Church in which injunctive relief was granted based on proof of coercion or fraud are distinguishable from the facts in the record before us. In *Mitsukiyo Yoshimura v. Alsup*, 167 F.2d 104 (9th Cir.1948) the taxpayer was coerced into signing incriminating documents and falsely threatened with internment. *Id.* at 105. No showing of similar misconduct appears in the record. The Church has not demonstrated how the representation that the IRS would temporarily forbear collecting the disputed deficiencies coerced or defrauded the Church in any manner.

In *Miller v. Standard Nut Margarine Co.*, 284 U.S. 498, 52 S.Ct. 260, 76 L.Ed. 422 (1932), the taxpayer commenced its business acting in reliance upon assurances from the Commissioner of Internal Revenue of the nontaxable nature of its product. *Id.* at 510, 52 S.Ct. at 263. No showing has been made that the IRS assured the Church that no taxes were owing. Like-

wise, there has been no showing that the Church relied on the claimed assurance to its detriment. Viewing the facts and law in the most liberal light as required by *Williams Packing*, the Church has failed to demonstrate that the Government cannot succeed on its claim on the basis of the cited authority.

The Church next argues that it has met the first prong of the *Williams Packing* test because the Government has conceded that it could not prevail on the merits regarding the alleged violations of the rule set forth in *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954). We find no such concession by the Government in its brief before this court or in the record of the proceedings before the district court.

▮ Pursuant to the *Accardi* doctrine, an administrative agency is required to adhere to its own internal operating procedures. *Id.* at 268, 74 S.Ct. at 504. The Church alleges that the IRS violated Policy Statement P–5–16, Policies of the IRS Handbook, *reprinted in* 1 Administration Internal Revenue Manual (CCH) at 1305–11, which states that when a taxpayer raises a question or presents information creating reasonable doubt about the accuracy or validity of an assessment "reasonable forbearance will be exercised with respect to collection provided (1) adjustment of the taxpayers claim is within the control of the service, and (2) the interests of the Government will not be jeopardized." *Id.*

The Church argues that *United States v. Heffner*, 420 F.2d 809 (4th Cir.1969) provides that when the IRS publicizes a policy that it has promulgated for the express benefit of taxpayers, the Government must act in compliance with that policy. The Church's reliance on *Heffner* is misplaced. *Heffner* is a criminal case. It does not involve an application of the Anti–Injunction Act. *Id.* at 810. The IRS regulation applied in *Heffner* concerned the requirement that *Miranda* warnings be given to suspects in criminal tax fraud investigations. *Id.* at 811. The remedy invoked in *Heffner* was reversal of the criminal conviction. *Id.* at 814.

The Church asserts that it is undisputed that IRS Policy Statement P–5–16, is a "procedural safeguard" which bars any collection activities until its claims for refund are resolved. The Government argues that P–5–16 indicates on its face that collection will be made if it is in the Government's interest. Accordingly, the policy was not promulgated for the *express* benefit of taxpayers. The Government further argues that it has not violated the forbearance policy. It is the Government's position that IRS Policy Statement P–5–16 does not require it to forbear collection of approximately $6,500,000 as to which there is no dispute. These conflicting contentions readily demonstrate that the Church's representation that the Government has made a concession concerning the application of the *Accardi* doctrine is without merit.

Viewing this conflict of law in the most liberal light, it cannot be said that there is no possibility that the Government will prevail on this issue. Thus, the Church has failed to demonstrate that it has met the burden imposed by the *Williams Packing* test.

### III

The Church argues that the levies violate the establishment clause of the First Amendment and the due process clause of the Fifth Amendment, and that therefore irreparable injury to the Church is presumed as a matter of law.

■ The Church relies on *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) in support of this argument. In *Elrod*, the Supreme Court stated that the "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Id.* at 373, 96 S.Ct. at 2689. *Elrod* did not involve an attempt to restrain tax assessments. Instead, the court was concerned with the free speech rights of public employees threatened with discharge because of political party affiliation. *Id.* at 349, 96 S.Ct. at 2678. A more important distinction, however, is the different standard that is applicable in granting injunctive relief in cases where that remedy is

not barred by the Anti–Injunction Act. The test applicable in *Elrod* was "probability of success on the merits." *Id.* at 374, 96 S.Ct. at 2690. As noted above, under *Williams Packing*, a person seeking injunctive relief must demonstrate "under the most liberal view of the law and the facts, [that] the United States cannot establish its claim." *Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1, 7, 82 S.Ct. 1125, 1129, 8 L.Ed.2d 292 (1962).

■ The Church also argues that it has established violations of the due process clause of the Fifth Amendment. The Church asserts that when "an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Mitchell v. Cuomo*, 748 F.2d 804, 806 (2nd Cir.1984).

In *Mitchell*, in affirming an order granting an injunction preventing a prison closure, the Second Circuit stated: "[g]iven the evidence of increasing overcrowding ... which constitute[s] the alleged threat to plaintiffs' eighth amendment rights, the district judge's finding of irreparable harm is not clearly erroneous." *Id.* at 806. The issuance of an injunction to prevent the closure of a prison is not expressly barred by the Anti–Injunction Act. Furthermore, the Second Circuit concluded an award of damages would be inadequate to remedy the harm that would flow from the closure of a 1000–bed facility and the transfer of its 475 inmates to other over-crowded prisons. *Id.* at 805. As discussed below, the Church has adequate remedies at law for all of its tax related claims.

In *Bob Jones University v. Simon*, 416 U.S. 725, 94 S.Ct. 2038, 40 L.Ed.2d 496 (1974), the Supreme Court stated that the *Williams–Packing* test was applicable to First Amendment and Due Process claims raised by the taxpayer. *Id.* at 749, 94 S.Ct. at 2052. The Court held that the taxpayer had an adequate remedy at law in an action for a refund. *Id.* at 746, 94 S.Ct. at 2050. No special consideration is granted to injunctions against tax collection sought on constitutional grounds. "[D]ecisions of

this Court make it unmistakably clear that the constitutional nature of a taxpayer's claim, as distinct from its probability of success, is of no consequence under the Anti–Injunction Act." *Alexander v. "Americans United" Inc.*, 416 U.S. 752, 759, 94 S.Ct. 2053, 2058, 40 L.Ed.2d 518 (1974) (claim that statutory prohibition against lobbying by tax exempt organization is unconstitutional); *accord, United States v. American Friends Serv. Comm.*, 419 U.S. 7, 11, 95 S.Ct. 13, 15, 42 L.Ed.2d 7 (1974) (claim that withholding tax interfered with Quaker's free exercise of religion).

■ The Church also argues that the fact that the assessment exceeds $9,000,-000 demonstrates irreparable harm. Mere allegations of financial hardship are insufficient to support a finding of irreparable harm. *Bob Jones Univ.*, 416 U.S. at 745, 94 S.Ct. at 2050. *See, Cool Fuel, Inc. v. Connett*, 685 F.2d 309, 314 (9th Cir.1981).

The Church further argues that the levies and assessments constitute injuries to the Church's privacy and reputational interests. The only case cited in support of this proposition is *Husby v. United States*, 672 F.Supp 442 (N.D.Cal.1987). As discussed above, the applicability of the Anti–Injunction Act was not an issue in *Husby*. The district court stated in *Husby* that the "sole question" before it was whether the statutory remedies of 26 U.S.C. § 7431 applied to the erroneous levy. *Id.* at 442.

In *Kemlon Products & Development Co.· v. United States*, 638 F.2d 1315 (5th Cir.), *modified*, 646 F.2d 223 (5th Cir.), *cert. denied*, 454 U.S. 863, 102 S.Ct. 320, 70 L.Ed.2d 162 (1981), the taxpayer also claimed that an injunction should issue because, without that remedy, it would suffer a "loss of business reputation." *Id.* at 1318. The Fifth Circuit rejected the taxpayer's argument that a mere conclusory allegation of reputational harm demonstrates irreparable harm. *Id.* at 1322–23. The same result was reached in *Church of Scientology Celebrity Centre v. Egger*, 539 F.Supp 491 (D.D.C.1982). "As is well settled in the tax field, irreparable injury cannot be established by an allegation of inju-ry to reputation.... [T]o establish irreparable injury, plaintiffs must allege that the financial penalties likely would cause Scientology ministers, churches or members financial ruin or other serious consequences." *Id.* at 496 (citations omitted).

■ The courts have repeatedly held that the opportunity to sue for a refund is an adequate remedy at law which bars the granting of an injunction.

[P]etitioner may pay income taxes, or, in the their absence, an installment of FICA or FUTA taxes, exhaust the Service's internal refund procedures, and then bring suit for a refund. These review procedures offer petitioner a full, albeit delayed, opportunity to litigate the legality of the Service's revocation of tax-exempt status and withdrawal of advance assurance of deductibility.

*Bob Jones Univ.*, 416 U.S. at 746, 94 S.Ct. at 2050; *see also Americans United*, 416 U.S. at 762, 94 S.Ct. at 2059 (taxpayer has adequate remedy in a refund suit following FUTA payment); *American Friend Serv. Comm.*, 419 U.S. at 11, 95 S.Ct. at 15 (full opportunity to litigate tax liability in a refund suit bars equitable relief); *Zimmer v. Connett*, 640 F.2d 208, 210 (9th Cir.1981) ("Tax assessments must be contested ... in an action for a refund in the Federal District Courts.... Absent a clear and explicit congressional mandate, we shall not depart from these well marked pathways.") (citations omitted); *Cool Fuel, Inc. v. Connett*, 685 F.2d 309, 314 (9th Cir.1981) ("Since the Supreme Court decision in *Bailey v. George*, 259 U.S. 16, 42 S.Ct. 419, 66 L.Ed. 816 (1922), it has been established law that payment of the tax followed by a suit for refund constitutes an adequate remedy at law.")

The Government challenges the Church's standing to seek relief for the Church officials who have been assessed under 26 U.S.C. § 6672. The Church argues that the section 6672 claims are derivative from the Government's main claim against the Church for the FICA and FUTA taxes since the Government may only satisfy the tax liability once. *Wollman v. United States*, 571 F.Supp. 824, 826 (S.D.Fla.1983).

The Church further asserts that, since the individuals assessed can seek indemnity from the Church, standing exists. *Reid v. United States*, 558 F.Supp. 686, 688–89 (N.D.Miss.1983). Inasmuch as one of the injuries claimed by the Church is the wrongful disclosure of taxpayer information to the third parties who received the assessments, the Church has asserted a direct injury from the issuance of the assessments. Likewise, to the extent that an individual who pays a penalty assessment may be indemnified by the Church, the Church has standing to challenge the validity of the claim because it will be injured economically, albeit indirectly. However, as discussed *supra*, the fact that the Church or the individuals may challenge the correctness of the assessment in a court action for refund provides an adequate remedy as a matter of law. *Bob Jones Univ. v. Simon*, 416 U.S. at 746, 94 S.Ct. at 2050; *Cool Fuel*, 685 F.2d at 314.

Remedies at law for wrongful disclosure in violation of 26 U.S.C. § 6103 are found in 26 U.S.C. § 7431(a). Section 7431(a) provides for damages for knowing or negligent disclosure of tax return information. We have previously stated our "reluctance to imply a judicial remedy for violations of § 6103 given Congress' explicit provision of a remedy." *United State v. Michaelian*, 803 F.2d 1042, 1049 (9th Cir. 1986). *See also, South Carolina v. Regan*, 465 U.S. 367, 374, 104 S.Ct. 1107, 1112, 79 L.Ed.2d 372 (1984) (the Anti–Injunction Act prohibits injunctions in the context of a statutory scheme which provides an alternative remedy).

The Church has not met its burden under *Williams Packing* to demonstrate that it will suffer irreparable injury unless an injunction is issued. Thus, neither prong of the *Williams Packing* test has been satisfied.

### IV

The Church argues that the district court violated its right to due process of law by dissolving the TRO and denying the preliminary injunction before the Church had the opportunity to file its reply to the Government's response as permitted by the local rules. The Government argues that there was no violation of due process as the district court must dismiss an action *sua sponte* if it lacks subject matter jurisdiction, even if the parties do not raise the issue. *Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986).

The district court granted the Church's request for a TRO on April 24, 1990 and issued a minute order setting a hearing date for the OSC for May 21, 1990. The parties were directed to follow the local rules regarding the timely filing of their documents. Simultaneously, the district court ordered that no appearance would be necessary. The Church alleges, and the Government does not contest, that the briefing schedule established by these dates under Local Rule 7 required that the Government file its response to the OSC by May 7, 1990. The Church's reply was due on May 14, 1990. The district court received the Government's response to the Order to Show Cause on May 7, 1990. Prior to the filing of the Church's reply, the district court issued its order on May 10, 1990, vacating the TRO and dismissing the request for a preliminary injunction.

Whether the district court had subject matter jurisdiction is a question of law which this court considers *de novo*. *Kruso v. International Tel. & Tel. Corp.*, 872 F.2d 1416, 1421 (9th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990). The Church has had a full opportunity to present its legal arguments in the briefs filed in this court. The Church does not contend that it was denied the opportunity to present facts showing that the court had subject matter jurisdiction under the *Williams Packing* test, but rather that, to "the extent that the District Court's denial of the preliminary injunction was based on 'the reasons and legal authorities cited in the Government's response to OSC,' it relied upon erroneous legal premises." Appellants Op.Br. at 20.

Assuming arguendo that the district court erred in not allowing the Church an opportunity to file a reply to the Government's response to the OSC, the Church must show that it has been prejudiced. *Patel v. I.N.S.*, 790 F.2d 786, 789 (9th Cir. 1986) ("Because the petitioners can demon-

strate no prejudice, we reject their due process claim.") The Church presented its contention that the Anti–Injunction Act was inapplicable in its Memorandum of Points and Authorities in Support of Application for Temporary Restraining Order and Order to Show Cause Re Preliminary Injunction. It does not claim before this court that a remand is required so that it may present additional facts in response to the issues raised by the Government. Because the district court was correct in ruling that it lacked subject matter jurisdiction, the rights of the Church were not prejudiced by the dismissal of the action without permitting it to file its reply to the Government's response to the OSC.

## CONCLUSION

The Anti–Injunction Act precludes the granting of an injunctive relief unless the requirements of the *Williams Packing* test are met. The Church has not demonstrated that under no circumstances could the Government prevail. The Church has also failed to establish that it will suffer irreparable harm unless an injunction is issued. Thus, the district court correctly determined that it lacked subject matter jurisdiction to restrain the tax assessments in issue.

AFFIRMED.